William C. Bryant, as Executor, etc., Appellant, v. Sarah A. Gay and Others, Respondents.— Judgment affirmed, without costs.—WARD, J.: Joseph N. Tift died on the 22d day of April, 1873. Previous to and at the time of his death he was one of a firm carrying on business in Buffalo manufacturing steam engines and boilers under the firm name of George W. Tift Sons & Co. The other members of the firm were George W. Tift, John V. Tift, Clarence L. Whiting, C. F. Gay, Mary A. Plimpton, and one share held by G. W. Tift in trust for Lewis Whiting Gay. There were fourteen shares in all in the concern; Joseph N. Tift was the owner of two and one-half shares. The members of the firm were closely related and no difficulty seems to have occurred prior to the death of Joseph. Joseph left a last will and testament which was duly admitted to probate and John V. Tift and the plaintiff were named as executors. On the 1st day of May, 1873, the survivors of this firm, together with Sarah A. Gay, organized a new one under the same name which took possession of the assets of the old firm and carried on the business. While the old firm was in existence, and in July, 1868, Joseph, John V. and George W. Tift, Whiting and C. F. Gay with four other parties organized in Buffalo a joint stock association under the laws of the State of New York named the Plimpton Fire Proof Elevating Company, the capital stock of which was $300,000. Joseph subscribed for $2,000 of the stock and was a director in the association up to the time of his death. This association erected and operated a fire proof elevator in Buffalo which was completed and ready for business in 1869. The old firm of G. W. Tift Sons & Co. furnished a large part of the material and means for the construction of this elevator. On October 30, 1869, the association mortgaged the property to secure the payment of $200,000. Joseph joined in the mortgage. The association had some real estate in Buffalo. The value of this elevator at the time of the death of Joseph, as found by the referee, was $255,000. The referee also found that at that time the association was indebted to the firm on open account in the sum of $36,122.35, and on promissory notes in the sum of $200,000. The firm held stock in the association, the par value of which was $170,000, which account, notes and stock were a part of the assets of

the firm at the time of the death of Joseph. In July, 1873, George W. and John V. Tift and others organized a corporation under the laws of the State of New York, under the title of the Tift Fire Proof Elevating Company, and the Plimpton Fire Proof Elevating Company conveyed its real estate including its elevator to this corporation. The consideration for such conveyance recited in the deed thereof was $190,000. No money was in fact paid, but for this amount the Tift Fire Proof Elevating Company issued to the stockholders of the Plimpton Company 1,900 shares of its stock of the par value of $100 per share, and on the same day the Plimpton Company executed and delivered to George W. and John V. Tift and Charles L. Whiting, Charles C. Gay and Mary A. Plimpton a mortgage on said elevator property conditioned for the payment of $237,-542.10, of which $200,000 was to secure the payment of the notes made by the Plimpton Company and held by the survivors of the old firm of G. W. Tift Sons & Co., and the balance to secure an account owing by the Plimpton Company to the firm. These facts the referee finds and that the transactions were in entire good faith and for the best interests of all concerned. This action was commenced in 1880, and was brought against the survivors of the old firm and Sarah A. Gay, and the personal representatives of such of those survivors as had died, for an accounting of and concerning the property and effects of the old firm and the disposition thereof by the survivors and the profits made by them out of the assets of the firm, and demanded judgment in favor of the plaintiff for a large amount. The defendants answered denying liability, and the issues were referred to a referee to hear, try and determine. The referee entered upon the trial and discovering that an accounting by the defendants was essential to the proper determination of the case, and upon the application of the plaintiff asking that an account be rendered of the affairs of the firm since the death of Joseph N. Tift, and the assets of the firm (the defendants being heard in opposition), ordered that the defendants render an account in the action which should embrace a full and itemized statement of the property, liabilities and uncompleted contracts which were of the old firm upon the death of Joseph, and a full statement of the transactions of the new firm to the date of the accounting, and of the present assets of the new firm as it then existed, which order was made on the 21st of March, 1885. The defendants in pursuance of this order made a very full and elaborate accounting under oath as required. This accounting was submitted to the referee and parties, and the plaintiff took certain exceptions thereto one of which was to an item of $112,000 specified in the account and required a detailed statement thereof, which was duly rendered and made a part of the original accounting. Afterwards and on the 3d day of August, 1887, the parties by their attorneys stipulated as to the issues of fact to be tried by the referee, and the stipulation recited as follows: "To expedite the trial of this action we stipulate and agree that the only issues of fact to be hereafter tried and decided are as hereinafter stated, and all other issues of fact, charges against and objections to the account rendered by the defendants impleaded, except questions of law arising upon said account, are hereby waived and abandoned, except as hereinafter stated." Then follow the issues, seven in number, covering the questions mainly which will be hereafter discussed. The parties proceeded to give evidence, the plaintiff insist-

ing that the defendants be required to proceed with their proof upon the trial on the ground that the burden rested upon the defendants. This motion was denied by the referee and the plaintiff excepted. The proof that was given very largely related to the Plimpton elevator and its value. The account as rendered seems to have been treated as evidence by the court and counsel upon the trial. In the account as rendered, which covered 316 pages of printed matter, there was an inventory of the assets of the old firm as of May 1, 1873, eight days after the death of Joseph. That inventory contains a table, first of nominal values and then of actual values, and also of liabilities. The value of nominal assets is stated at $605,-658.74. The actual value of the assets and property, $135,862.48. Liabilities, $386,-878.97. Nominal surplus, $218,779.77. Actual deficiency, $251,016.49. In this table the nominal value of the Plimpton accounts, notes and stock of the old firm are put at $406,122.35. The actual value of the property embraced in this item is not given, but the accounts, notes and stock are treated as valueless. The referee found as a fact that at the time of the death of Joseph the value of the assets of the old firm was $135,682.47, and that the liabilities were $386,678 97, and that the firm was insolvent, and that the excess of liabilities over assets of the old firm being $251,016.49 had been paid by the members of the new firm out of their private and individual means and not out of the assets or property of the firm; that the actual value of the assets and property of the old firm was as specified in the inventory and not the nominal value as therein stated; that the Plimpton Elevator Company at the time of the death of Joseph was insolvent, having a total indebtedness of $159,867.43, in addition to the indebtedness owing to the old firm on accounts and notes above given of $236,122.55. The referee finds that the interest of the firm in the Plimpton Fire Proof Company was of little or no value. The referee found that in March, 1879, the Tift Fire Proof Elevating Company sold its real estate, including its fire proof elevator (the Plimpton elevator), for $255,000, and that in making such sale the new firm acted in entire good faith and that that sum was the best price that could be obtained for the property. The referee also found the several issues set forth in the stipulation in favor of the defendants; that they had made diligent efforts and in good faith to realize as much as possible from the claims held by the old firm against the Plimpton Elevator Company, and to realize as much as they could, and did realize in fact as much as they possibly could out of and from all the assets and properties of the said old firm; that they had fully, fairly and completely accounted in this action for all the assets and properties of the said old firm, and in effect that the survivors and the defendants in all their transactions with the partnership property had acted in good faith and in the best interests of all concerned. The effect of the accounting and the referee's conclusions were that nothing remained to the estate of Joseph, either out of the original assets of the old firm, or out of any accretions or profits that had resulted from the use of the partnership property by the survivors, and, therefore, the complaint should be dismissed, with costs against the estate of Joseph. The plaintiff attacks these conclusions and asks for a reversal of the judgment because the referee was not warranted in his conclusions of fact from the evidence; that as the referee had found, there was no accounting by the defendants until made in the present

action; that the business had been continued by the survivors a great length of time, and new enterprises had been engaged in with the property of the old firm; that as the survivors being in a sense trustees for the estate of Joseph had wrongfully commingled the funds of the old firm with other enterprises in which they were interested, either as stockholders or personally, they should be held to a rigid rule of accountability, and from all the evidence it was apparent that their accounting was not reliable, and that the claims set forth in the complaint were established. The plaintiff contends that the nominal value of the property in the inventory should be charged upon the defendants as they had not by proper explanatory evidence shown that the actual value of the property as stated by them in the inventory was the true value, and that the referee should have found with him upon this question as a matter of law. We cannot sustain this contention, as the referee had the right to consider the whole evidence as to the value of the inventoried property; he had the right to take into account all the proof as to the value of the interests of the old firm in the Plimpton elevator property which constituted the chief assets of that firm. Both sides gave proof as to the value of that elevator property; the tendency of the plaintiff's proof was that it was worth the nominal value stated in the inventory, while the defendants' proof, showing the use of the property and its value, brought the property down to a much lower valuation; besides, the plaintiff relies upon the account of the defendants to show the nominal value of this property and of the other properties of the old firm stated in the inventory. The defendants are also entitled to the benefit of their statement in the inventory as to its actual value in connection with the statement as to the nominal value, and from a review of the evidence we do not differ from the referee's conclusions as to the value of the property. The plaintiff seeks to charge the defendants with the amount of the consideration mentioned in the deed from the Plimpton Association to the Tift Fire Proof Elevator Company of $190,000, but in view of the fact that the company (the Plimpton Company) received nothing but shares of stock in the Tift Company at par value, and that this was not an individual transaction, but between an association and a corporation, and the property received by the corporation for the shares so issued to the Plimpton Association was of little if any value; this contention also falls. The plaintiff also contends that the point was well taken before the referee, that notwithstanding the accounting that had been insisted upon by him and obtained, the burden upon the trial of the stipulated issues still remained with the defendants, and that it was for them to show by further and more conclusive proof the good faith and propriety of their actions, and that nothing remained to the estate of Joseph in their hands. The plaintiff had waived by his stipulation all objections to the accounts of the defendants, except such questions of law as might arise. He had brought the defendants into court charged in the complaint with dereliction of duty as survivors with regard to the property of the old firm, and that there remained in the hands of the defendants property of the estate for which judgment should be given to the plaintiff. He had forced an accounting by the defendants, and he cannot now object that the order made by the referee for such accounting was irregular, or that it had not all the force of an order made by the court. While the burden was thrown upon the de-

fendants to make the account in a proper sense, still, when it was made, the burden shifted and fell upon the plaintiff to attack that account, and remained with him to the end to establish the cause of action set forth in his complaint. The referee was, therefore, right in his ruling upon this subject. The appellant concedes that the debts of the old company were the amount stated in the inventory, of nearly $400,000. There seems to be abundant evidence to sustain the conclusions of the referee, that the value of the assets of the old firm was about $131,000. This large difference against the the old firm of over $250,000, there seems to be but little question was made up out of the private means of the survivors. This bare statement would seem to put at rest any claim that Joseph N. Tift at the time of his death owned a farthing's interest in the property of the old firm. Charging him with this large deficit, it is not apparent from the evidence in this case how it was overcome by the subsequent management of the property of the old firm by the new, so as to leave anything for the plaintiff. It is true that, while the old firm might in fact have been insolvent at the time of the death of Joseph, if there were subsisting contracts or property out of which might spring in the future, if judiciously managed, profits that would wipe out the liabilities of the old concern and leave a balance, the plaintiff might share in that, but there is nothing in this case to justify such hopeful conclusions. Certain exceptions were taken by the plaintiff to the admission or rejection of evidence upon the trial. We do not deem it necessary to consider them here, as, even if they embraced the errors alleged by the plaintiff, they could not possibly have affected the result or averted the inevitable conclusions that the referee reached, and which we have reached from the papers before us, that, at the time of the death of Joseph, the old firm was hopelessly insolvent and there was nothing for the survivors of the firm to build upon, out of which to work any benefit to the plaintiff. The judgment should, therefore, be affirmed, but as it was proper for the plaintiff to bring this action and obtain the accounting, no costs should be imposed upon the plaintiff as administrator upon this appeal. Lewis, Bradley and Werner, JJ., concurred.