CLARKE, P. J., SCOTT, DOWLING and SHEARN, JJ., concurred.

Determination appealed from and judgment of Municipal Court reversed and new trial ordered, with costs in all courts to abide event.

---

AMY ONGLEY, as Administratrix, etc., of GEORGE BOOTH ONGLEY (GEORGE BYRON ONGLEY), Deceased, Appellant, v. MAX MARCIN and AL H. WOODS, Respondents.

First Department, December 21, 1917.

Contract — agreement to write a play — suit by husband of one party against coadventurer for accounting — time of performance — waiver — injunction — right to have name advertised as coauthor.

In a suit by the administratrix of the author of plays against a producer and a coadventurer with the deceased, it appeared that the plaintiff's husband had entered into a contract with the defendant produce- to

write and deliver a play; that his name as author was to be advertised therein, and that any change in the play was to be mutually agreed upon; that thereafter with the consent of the producer the plaintiff's husband and the defendant coadventurer entered into an agreement by which the latter became associated in originating and writing the play, and by which the plaintiff's husband agreed to divide his profits equally; that prior to the making of this agreement the plot of the play had been agreed upon, and thereafter the parties worked together, but before it was entirely completed the plaintiff's husband died, and that thereafter the coadventurer or some other person completed the play which was produced by the defendant under a different name; that the coadventurer in violation of his duty to the plaintiff and her husband has appropriated the play and claims sole authorship and ownership thereof, and that the defendant producer has co-operated in producing the play in disregard of plaintiff's rights, and that a large amount of money has been realized in which the plaintiff is entitled to her proportionate interest.

*Held*, that these facts entitled the plaintiff to an accounting as against her husband's coadventurer; that the fact that by the agreement between her husband and the coadventurer their interest in the royalties is several does not deprive the plaintiff of a right to an accounting, for it may be inferred that said coadventurer has received not only his own share of the royalties, but the share to which the plaintiff was entitled as well.

As the play was taken under the contract, the time specified for delivery was thereby waived.

The plaintiff is entitled to have the name of her husband advertised as the coauthor of the play, and to have the further production thereof enjoined if this be not done.

In view of her interest as a co-owner in the play and her reserved rights therein, and of the fact that her husband left other literary productions, it cannot be said that her right is a mere naked legal one.

The producer of the play was properly joined as a defendant.

APPEAL by the plaintiff, Amy Ongley, as administratrix, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 26th day of June, 1917, dismissing the complaint at the opening upon the trial at the New York Special Term.

*Martin W. Littleton*, for the appellant.

*Max D. Steuer* [*Sidney J. Loeb* with him on the brief], for the respondent Marcin.

*Nathan Burkan*, for the respondent Woods.

LAUGHLIN, J.:

This is a suit in equity by the administratrix of George Booth Ongley to have it adjudged that she is the owner of a certain play entitled " Cheating Cheaters " and of all the rights, benefits, advantages and royalties to which she may be entitled by virtue of certain contracts annexed to and made a part of the complaint and by the other facts alleged; that her deceased husband was the author of the play; that the defendants should account for the profits realized by them on the production and presentation of the play, and be enjoined from producing the play and from claiming authorship or ownership thereof, and that defendant Woods be enjoined from paying any of the proceeds of such production to defendant Marcin, and that plaintiff is entitled to recover general damages in the sum of $50,000 alleged to have been sustained by her from the wrongful acts of the defendants in the premises.

It is alleged, or was stated in the opening and might have been proved under the complaint, that the plaintiff's husband was an author, playwright and producer of drama of considerable experience and fame, and at the time of his death was the owner of an interest in several plays, stories and other literary works; that on the 20th of January, 1915, he entered into a contract in writing with the defendant Woods to write a play which was then to be known as " Birds of a Feather," by which he agreed to grant to Woods the exclusive right and license to produce the play in the United States and Canada in consideration of $500 then paid and of Woods' agreement to pay royalties out of the gross receipts on a basis therein specified, and to deliver the play not later than the 1st of April, 1915, and Woods agreed to · produce the play within one year from that date under a penalty of forfeiture of his rights under the contract; that it was further expressly agreed that Ongley's name as author should be advertised as therein provided; and that any change made in the play was to be mutually agreed upon by the parties in writing. The agreement contained further restrictions with respect to the use of the play and licensing its use for motion picture purposes, the extent of the production and presentation thereof by Woods, an option for the use of the play by

Woods in Great Britain and her provinces, and having it copyrighted in the name of Ongley as author and Woods as proprietor. It is further alleged that thereafter, with the consent of Woods, Ongley and the defendant Marcin entered into an agreement on the 29th of January, 1915, by which Marcin became associated with Ongley in originating and writing the play and by which Ongley agreed to divide his profits equally with Marcin, with a provision, however, that Marcin's share should be paid over to him by Woods, and that at the time of making the agreement Ongley divided the down payment of $500 which he had received from Woods with Marcin. It is alleged that prior to the making of the agreement with Marcin the plot of the play had been agreed upon between Ongley and Woods and that thereafter Ongley and Marcin worked together in completing the play, the work consisting mainly in determining the dialogue to express the plot and in determining the characters to be portrayed; that on the 23d of October, 1915, before the play was entirely completed but after the completion of one and one-half acts thereof, Ongley died; that thereafter Marcin or some person unknown to plaintiff completed the dialogue of the play and on or about the 1st of August, 1916, Woods produced and presented it under the title " Cheating Cheaters," and continued the production and presentation thereof until about the time this action was commenced, and has advertised Marcin as the sole owner thereof; that gross receipts from the production of the play have been received in excess of the amount of $350,000; that plaintiff forbade the production of the play unless Ongley was advertised as the author, and that the defendants have proceeded in defiance of her protest and deny Ongley's authorship or that she has any ownership or interest therein, and have refused to send her statements of weekly gross receipts as provided in the contract between Ongley and Woods, or to account to her.

The contract between Ongley and Marcin also provided, among other things, in effect, that where any consent of Ongley was required under his contract with Woods the consent of Marcin should also be obtained; that neither should transfer or assign his rights in and to the play without the consent of the other; that all contracts to be secured for the

play should be secured in their joint names, and that all advertising in connection with the play relative to the authorship thereof should *mention* both their names.

Sufficient of the allegations of the complaint and of the opening of counsel has been stated to show that Ongley and Marcin were engaged in a joint adventure and that Marcin, in violation of his duty to his coadventurer and the personal representative of the latter, has appropriated the play, the plot of which was originated by Ongley, and completed the writing thereof, and claims sole authorship thereof and ownership therein; that defendant Woods has co-operated with Marcin in producing the play in disregard of plaintiff's rights and that a large amount of money has been realized from the production thereof in which the plaintiff is entitled to her proportionate interest of the royalties on the gross receipts; and furthermore, that the rights of the plaintiff have been violated in that the name of her husband has not been and is not being advertised as a coauthor of the play. These facts clearly entitled the plaintiff to an accounting as against Marcin. The fact that by the agreement between her husband and Marcin their interest in the royalties is several does not deprive the plaintiff of a right to an accounting, for it is fairly to be inferred that Marcin has received not only his own share of the royalties but the share to which the plaintiff was entitled as well. Doubtless for the additional work performed by Marcin after the death of Ongley in completing the play Marcin would be entitled to an allowance by way of compensation, but that question is not now presented for decision. It is immaterial whether Marcin and Woods have recognized and proceeded under the contract to which reference has been made, or under some new contract or arrangement, for in either event plaintiff may call Marcin to account.

Counsel for respondents seem to regard the action as one for services under the contract between Woods and Ongley, and argue that the contract became abrogated by Ongley's death; and they rely on *Sargent* v. *McLeod* (209 N. Y. 360); but manifestly it is not such an action. The contract was to write and deliver a play. The defendant Woods has accepted the play which Ongley conceived and which was completed

by his coadventurer. If, therefore, the play was taken under the contract, the time specified for delivery was thereby waived. Doubtless, if Ongley had not died and Woods had proceeded under the contract with him, but failed to pay the royalties, Ongley would not have been entitled to an accounting, but would have been relegated to an action at law to recover the royalties (*Marvin* v. *Brooks*, 94 N. Y. 71; *Moore* v. *Coyne*, 113 App. Div. 52); and the plaintiff, of course, occupies no better position with respect to the royalties as such; but Woods does not stand on the contract. He has proceeded in disregard of all of Ongley's and the plaintiff's rights, and in conjunction with the defendant Marcin has appropriated the play, the principal part of which originated with the plaintiff's husband and in which she is a co-owner, and since Woods had notice by the express terms of the contract between Ongley and Marcin, to which he consented, that Marcin could not without the consent of Ongley or Ongley's representative license the production of the play, it would seem, if Woods has produced it under some new agreement or arrangement with Marcin, that both of them would be accountable to the plaintiff. (*Schantz* v. *Oakman*, 163 N. Y. 148.) In any event, the plaintiff on the facts alleged is entitled to have the name of her husband advertised as the coauthor of the play and to have the further production of the play enjoined if that be not done. In view of her interest as a co-owner in the play and her reserved rights therein, and of the fact that Ongley left other literary productions which he owned or in which he had an interest, it cannot be said that this is a mere naked legal right. A sufficient basis, therefore, appears for joining Woods as a defendant in the action.

It follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., SCOTT, DOWLING and SHEARN, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.