ETHEL GREENSLETE, as Administratrix, etc., of WILLIAM H. GREENSLETE, Deceased, Respondent, *v.* WALTER A. FERGUSON, Appellant.

Third Department, May 14, 1920.

Partnership — suit by widow of deceased partner for accounting — rights of widow where partnership has no net assets — duty of surviving partner — rights of widow in profits earned by surviving partner.

The widow of a deceased partner has no interest in the partnership business where on inventory it is shown that her husband if living would not be entitled to anything on the winding up of the business.

All that can be required of a surviving partner is to account for the partnership assets.

Where, shortly after the death of the plaintiff's husband, the plaintiff and the defendant, the surviving partner, selected appraisers who appraised the grocery business in which the decedent and the defendant were partners and it then appeared that the plaintiff had no interest in the business, and the defendant, in the belief that the business was his, invested more money and continued the business, a judgment in a suit for an accounting instituted a year after the appraisal, rendered for a substantial sum in favor of the plaintiff, is erroneous and will not be permitted to stand.

On all the evidence, *held,* that the plaintiff, after the appraisal was made and it was ascertained that she had no interest in the business, turned the business over to the defendant.

If the defendant continued the partnership business with the consent of the plaintiff and earned therein certain profits in which the plaintiff claims to share, he is entitled to compensation during the period in which the profits were earned.

And on that basis it was shown that the profits earned were less than a reasonable compensation for the services rendered by the defendant.

WOODWARD and KILEY, JJ., dissent, with opinion.

APPEAL by the defendant, Walter A. Ferguson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Fulton on the 8th day of September, 1919, upon the report of a referee.

*Keck & Littell* [*J. Keck* of counsel], for the appellant.

*Harry M. Garvey,* for the respondent.

JOHN M. KELLOGG, P. J.:

The defendant had carried on the grocery store in the little village of Broadalbin for about sixteen years. The title to the store building and the fixtures was in him and his wife. Greenslete had been his clerk for several years and, on the 15th day of September, 1915, was admitted as an equal partner in the business, each contributing $500, the firm renting the store and fixtures. Greenslete died December 4, 1916, leaving the plaintiff, his widow, the only person interested in his estate. The partners made an inventory November 26, 1916, at retail prices, which showed that the firm debts exceeded its assets by $400. Plaintiff's father-in-law, for her and with her consent and approval, and the defendant each selected an appraiser, and the appraisers on March 5, 1917 inventoried the firm assets and liabilities: The stock on hand at $2,202.35; accounts, $1,151.11; total assets, $3,353.46. Total liabilities, $3,290.12. Apparent net assets, $63.34. The accounts were all treated as cash; the stock was inventoried at cost. The stock was retailed at from eighteen to twenty per cent above cost, and if we add twenty per cent of the cost of the stock to the inventory it would represent the largest amount which by any possibility could be realized from the firm assets, if sold at retail without expense. That would make the net assets $503.81, of which one-half would be $251.90. The accounts were not all collectible. The findings of the court, upon ample evidence, establish an indebtedness from the deceased partner to the defendant, on account of the partnership business, of $274.08, and clearly demonstrate that, upon the view most favorable to the plaintiff, she had no interest in the partnership business. All that can be required of a surviving partner is to account for the partnership assets and the proceeds thereof. The history of the partnership, and its want of success, eliminate any discussion of good will from the case.

Being unable to sell the business, the defendant used about $1,600 of his own money to buy other merchandise, making the purchases in his own name and doing the business in his own name and in his own store. He believed the business was his and carried it on as his own. He swears that the father-in-law, in the plaintiff's behalf, turned the business

over to him. No administration was taken upon the estate of the deceased partner until December 10, 1917. This action was brought March 8, 1918, for an accounting of the copartnership business, and resulted in a judgment, September 8, 1919, for plaintiff of $845.01 for her interest in the copartnership business, together with costs, $230.91. The referee finds that the defendant acted without the advice of counsel and in good faith, and that he disposed of the assets to the best advantage. It is difficult to understand how the plaintiff's interest in the property, which was worthless in March, 1917, could materialize in this very substantial judgment. After the inventory, the plaintiff, while she was living at Broadalbin for some months, traded at the store for cash, as any other customer would.

The alleged profits arise from the defendant's carrying on his own business in his own store with his own capital. The fact that he was the surviving partner did not prevent him from again engaging in the grocery business and using his store and fixtures. He did not use the firm's credit or name, but the business was entirely his and the carrying on of the business was to the advantage of the firm in marketing the goods, which were not otherwise salable, for a reasonable price. The judgment is erroneous and a court of equity cannot allow it to stand when it is so unjust, giving the plaintiff, without reason, the fruits of defendant's labor. (*Bryant* v. *Gay*, 88 Hun, 614; 153 N. Y. 655.) It is apparent that the plaintiff, her father-in-law and the defendant, after the inventory, understood that she had no further interest in the business and the conduct of each party makes that fact plain. Defendant swears that after the inventory he told the father-in-law " we were worth just $63.34; that he could take the $63 and the store and I would sell the fixtures for $100 less than they cost us, and he told me I could have the store, he didn't want to go in the grocery business." There was no satisfactory denial of this conversation and the referee should have found that the business was turned over to defendant.

If the business was continued with the consent of the widow, the defendant is entitled to compensation for earning the profit she claims. " Care should be taken to distinguish

between the cases arising over claims for compensation for winding up the affairs of a partnership which has been dissolved and those arising over claims for compensation for continuing, after the death of a partner, the business of the firm, pursuant to the articles, or with the consent of the personal representative of the deceased who receives the profits arising from the continuation of the business. *Robinson* v. *Simmons,* 146 Mass. 167, is a type of this class of cases." (*Burgess* v. *Badger,* 82 Hun, 488, 493.)

" If, without the consent of the representatives of the deceased partner, the surviving partner, at his own risk, continues the business and makes a profit, the estate is bound to allow reasonable compensation if it elects to share in the gains thus made." (20 R. C. L. 1000; *Consaul* v. *Cummings,* 222 U. S. 262.)

" There is no fixed rule of law as to the rights of compensation to partners who carry on the business of a partnership after the death of one of the members. Each case must be decided on equitable principles, appropriate to the facts of the case. * * * But there are many exceptions to the rule [that compensation is not allowable] where the courts recognize that the rule as applied to the facts would produce an inequitable result. Nothing can move a court of equity but equity and good conscience." (*Stem* v. *Warren,* 185 App. Div. 823, 833, 834.)

" For his services in continuing the business, the survivor will not be allowed to charge unless there is an agreement therefor, unless the court is satisfied that the services have been very beneficial to the estate or unless the representatives of the deceased partner elect to share in the profits." (30 Cyc. 640.)

These views are not opposed to *Clausen* v. *Puvogel* (114 App. Div. 455). There the surviving partner was also the administrator and he was limited to an administrator's fees. The other cases referred to are not in the way when the facts of each case are fully understood. No case has its brother; good common sense and good conscience are the best guides in determining what a court of equity should do in any particular case. Equity will not compel an unjust and unreasonable result.

The defendant, in carrying on his grocery business from the date of the March inventory to the judgment, has made a profit of $2,194.84, and the evidence shows beyond contradiction that his services were worth $2,496, for which credit is denied. In other words, with his money and credit and services, the business has not earned him reasonable wages. The judgment gives the plaintiff substantially one-half of his earnings, less certain indebtedness which concededly was due him. Adopting the view most favorable to the plaintiff, she cannot appropriate the fruits of defendant's service for eighteen months without compensation, and a reasonable compensation for his services leaves the business where it was when the inventory was taken — insolvent. The judgment should be reversed, with costs, and the complaint dismissed, with costs.

All concur, except WOODWARD, J., dissenting, with an opinion, in which KILEY, J., concurs.

WOODWARD, J. (dissenting):

The complaint alleges that in the month of September, 1915, the defendant and one William H. Greenslete entered into a copartnership for the purpose of engaging in the grocery business in the village of Broadalbin, N. Y., under the firm name and style of Ferguson & Greenslete; that the agreement provided that each should contribute $500 as capital, and that the defendant should contribute the use of store fixtures, while Greenslete was to furnish a horse and delivery wagon for the use of the business, and that the profits should be equally divided between them; that the copartnership thus instituted continued until the death of William H. Greenslete on the 4th day of December, 1916; that at the time of his death and the termination of the copartnership there were certain assets, the amount of which is unknown to the plaintiff, as well as liabilities which are also unknown; that the plaintiff was duly made administratrix of the estate of William H. Greenslete; that from the time of the death of the said Greenslete the defendant has continued individually in the possession of said store and said business, and has continued to manage and carry on said business, and to dispose of said stock in trade, and to collect the debts and things

in action, and to pay debts and liabilities of said firm out of the avails thereof; and he has collected large sums, the amount of which the plaintiff does not know and cannot ascertain; that said business so carried on and managed, and its good will, have increased in value and the net profits of the same have been large, although their amount is unknown to plaintiff and cannot be ascertained; that the plaintiff has requested of said defendant a statement and account of said copartnership transactions which defendant has refused to give, and that no final settlement of the accounts of said partnership has ever been made, and that upon a final accounting a balance will be found to be due from the defendant to the plaintiff. It is then alleged that the plaintiff has no adequate remedy at law, and asks for an accounting and the usual relief.

The answer admits the partnership, but asserts that at the time of the death of Greenslete the debts exceeded the assets of the firm; admits that the defendant has continued the business and that no final account has been made, but alleges that the plaintiff has received statements and full information of the condition of the assets, accounts, etc., of such copartnership as far as it has been possible to ascertain or know the same. The answer then sets up some alleged failures on the part of Greenslete to fulfill all the terms of the partnership agreement, and then " for another further and separate answer and defense to the complaint herein, alleges that he as the sole surviving partner of the said William H. Greenslete, deceased, has as he is informed and believes true, the sole right and power to wind up the affairs of said partnership business and convert the remaining assets thereof into money, collect the outstanding accounts and pay the debts owing and thereafter make distribution of any remaining proceeds if such there be, to the plaintiff who is the wife and legal representative of her intestate and this defendant; that he has since the death of the plaintiff's intestate, proceeded with reasonable diligence so to do but has been unable to accomplish it in that he has been unable to collect all of the outstanding claims and book accounts and also convert all of the merchandise assets into money and pay debts owing by such copartnership; that some of said debts are still owing and he believes

can be and will be within a reasonable time, collected and that the merchandise assets will also within a reasonable time be sold at a reasonable price and converted into money without sacrifice which will doubtless result in case he is forced to sell the same at public auction," etc.

Upon the trial of the action the defendant appears to have taken the position that it appeared from a certain inventory of March 5, 1917, about three months after the death of Greenslete, that the firm was insolvent, and that the defendant thereupon took over the business and conducted it in his own name, mingling new goods with those then in stock for the purpose of closing out the goods without sacrifice. In other words, the position of the defendant is that the inventory having disclosed that the firm was insolvent he was at liberty to terminate the relationship of a surviving partner, and to purchase goods in his own name and to sell them in connection with the old stock, and thus to close up the business. This is likewise the attitude upon this appeal, the learned referee having given judgment in favor of the plaintiff.

This position is wholly untenable. The defendant, upon the death of his copartner, became the legal owner of the partnership assets, charged with the duty of closing up the affairs of the concern and paying over to the estate of the deceased partner a just portion of the excess, if any, remaining after the partnership obligations were discharged. In other words, a copartnership imposes upon each partner the duties and obligations of a fiduciary as between themselves while living, and upon the death of either of them the survivor continues to occupy that fiduciary relationship to the estate of the deceased partner; he is bound to exercise the utmost good faith, and cannot deal with the assets for his own benefit. " It is a well-settled and salutary rule," say the court in *Dutton* v. *Willner* (52 N. Y. 312, 318), " that ' a person who undertakes to act for another in any matter shall not, in the same matter, act for himself.' It is only by a rigid adherence to this simple rule that all temptation can be removed from one acting in a fiduciary capacity to abuse his trust, or seek his own advantage in the position which it affords him. One consequence of a violation of the rule is that the agent must, at the option of his principal, account to him

for any profit he may have made by the transaction. It matters not how fair the conduct of the agent may have been in the particular case, nor that the principal would have been no better off if the agent had strictly executed his power, nor that the principal was not in fact injured by the intervention of the agent for his own benefit. If the agent deals with the subject-matter of his agency, or, by departing from the instructions of his principal, obtains a better result than could have been obtained by following them, the principal can claim the advantage thus obtained, even though the agent may have contributed his own funds or responsibility in producing the result. The rule which places it beyond the power of the agent to profit by such transactions is founded upon considerations of policy, and is intended not merely to afford a remedy for discovered frauds, but to reach those which may be concealed; and also to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates. [Citing authorities.] All profits and every advantage beyond lawful compensation made by an agent in the business, or by dealing or speculating with the effects of his principal, though in violation of his duty of agent, and though the loss, if one had occurred, would have fallen on the agent, are for the benefit of the principal." (*Ridgely* v. *Keene*, 134 App. Div. 647, 649; *Bain* v. *Brown*, 56 N. Y. 285, 288, 289.) "The rules applies where there is a *confidential* relation between parties, creating or tending to produce a conflict of duty and interest by a trustee or agent, in dealings or transactions relative to the subject-matter of his trust or agency." (*Lingke* v. *Wilkinson*, 57 N. Y. 445, 450, 451; *Taylor* v. *Klein*, 47 App. Div. 343, 346; affd., 170 N. Y. 571.) "When agents, and others acting in a fiduciary capacity, understand that these rules will be rigidly enforced, even without proof of actual fraud, the honest will keep clear of all dealings falling within their prohibition, and those dishonestly inclined will conclude that it is useless to exercise their wits in contrivances to evade it." (*Bain* v. *Brown, supra.*)

In the case now before us the defendant, occupying a fiduciary relation, has concededly mingled the assets of the

copartnership with goods purchased on his own account and sold from the same store, and within the influence of the firm good will, that prevailed before the death of the partner. He has made a profit out of the transaction, though his alleged inventory of the 5th of March, 1917, indicated an insolvent concern. He has, by his own admissions, failed to discharge the obligations of a surviving partner, and we see no reason why the law should not take its course as applied by the referee in this case.

The judgment appealed from should be affirmed.

KILEY, J., concurs.

Judgment reversed on the law and facts, with costs, and the complaint dismissed, with costs. This court disapproves of findings of fact numbered 8 and 9.