AMY ONGLEY, as Administratrix, etc., of GEORGE BOOTH ONGLEY (GEORGE BYRON ONGLEY), Deceased, Appellant, Respondent, *v.* MAX MARCIN and Another, Respondents, Appellants.

First Department, November 27, 1925.

Joint adventures — action to compel accounting by playwright and producer for share of profits in play originated by plaintiff's intestate — intestate after making agreement with producer entered into joint adventure with other playwright — after intestate's death other playwright completed play and producer produced it as play of said playwright — on prior appeal Appellate Division decided that joint adventure was entered into — referee found in favor of plaintiff and directed accounting but failed to find that other playwright was entitled to compensation for work in completing play — on reference to take and state account evidence was properly received as to other playwright's right to compensation for completing play — error for referee to find that other playwright had forfeited right to compensation by producing play as his own — plaintiff was not entitled to compound interest — referee did not have right to grant plaintiff extra allowance of costs.

In an action by an administrator of a playwright to compel an accounting by another playwright and by the producer of a play, for the share of profits in the play which was originated by plaintiff's intestate, in which it appears that the intestate, after making an agreement with the producer, entered into a contract with the other playwright, which was held on a prior appeal to constitute a joint adventure, to write the play and to share the proceeds, and that before the play was completed the intestate died and the play was completed by the other playwright and produced as his own work, the other playwright had the right to introduce evidence before the referee appointed to take and state the account as to the value of his services in completing the play, for the Appellate Division intimated that he was entitled to such extra compensation,

and furthermore, the referee who was appointed to determine the right of the plaintiff to an accounting directed that the final judgment should determine and adjudge the amount of recovery or proportion of profits which have accrued and been received by the defendant and which shall be awarded to the plaintiff, and the portion accruing from future productions of the play, and failed to find that the other playwright was entitled to extra compensation because no evidence was introduced on that question.

Under the decision of the Appellate Division and the interlocutory judgment the referee appointed to take and state the account had the right to receive evidence as to the amount which the other playwright was entitled to receive for completing the play, for up to that time the said other playwright had had no opportunity to present his claim for such services, and the amount due him was a proper element of the account.

The plaintiff is not entitled to compound interest on the amount found due to her on the accounting.

It was error for the referee who was appointed to take and state the account to find that the other playwright had forfeited his right to extra compensation by his act in producing the play as his own composition.

The referee appointed to take and state the account had no power to award to the plaintiff an extra allowance of costs.

CLARKE, P. J., and MARTIN, J., dissent, with opinion.

APPEAL by the plaintiff, Amy Ongley, as administratrix, etc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of June, 1925, denying the confirmation of the report of the referee and setting aside said report and referring the matter to an official referee to take and state an account between the parties herein.

Appeal by the defendant, Max Marcin, from so much of said order as bars on the new reference evidence as to additional allowance to him for work done by him after the death of plaintiff's intestate.

Appeal by the defendant, Al H. Woods, from so much of said order as allows the plaintiff simple interest on items of the account.

*Martin W. Littleton* [*Paul N. Turner* and *Edwin G. Marks* with him on the brief], for the plaintiff.

*Max D. Steuer,* for the defendant Max Marcin.

*Nathan Burkan,* for the defendant Al H. Woods.

MERRELL, J.:

The action grew out of the authorship and production of a play known as " Cheating Cheaters." Plaintiff's intestate was an author and playwright of some experience and reputation. He conceived and originated the idea and plot of a play which he intended to write, involving two bands of crooks posing as respectable society people, neither band being aware of the character of the other, and the leading character being an attractive woman

posing as a crook but who, in fact, was a detective. The defendant Woods was a theatrical producer, and on January 20, 1915, plaintiff's intestate entered into an agreement in writing with Woods by which plaintiff's intestate was to write the play and the same was to be produced by said defendant. The name of the play was agreed upon at that time as " Birds of a Feather." Subsequently the title was changed to " Birds of Prey," and finally when produced was known as " Cheating Cheaters." Under the agreement Woods was to have the exclusive right and license to produce the play in the United States and Canada. The agreement also provided that Woods was to pay Ongley, plaintiff's intestate, $500 in cash as an advancement on royalties and was to pay certain royalties and percentages of moving picture and other rights received from the production of the play. On January 29, 1915, with the knowledge and acquiescence of the defendant Woods, plaintiff's intestate entered into a written agreement with the defendant Marcin, who was a playwright of acknowledged ability and reputation, whereby Marcin was to become associated with Ongley in the production and ownership of the play concerning which Ongley had contracted with the defendant Woods. Marcin and Ongley agreed to become jointly interested therein and each to receive one-half of all royalties received from the production of said play. In furtherance of said agreement Ongley paid to Marcin $250 of the $500 which he had received from Woods, and assigned to Marcin a one-half interest in his contract with Woods. Thereupon plaintiff's intestate and the defendant Marcin collaborated in the writing of said play. The work of writing the play had proceeded to an extent that an act and a half had been written by Ongley in collaboration with Marcin on October 23, 1915, on which date Ongley died, leaving the play uncompleted. After the death of Ongley the defendant Marcin appropriated the work which had already been done by himself in collaboration with plaintiff's intestate and completed the projected play, producing a play of four acts, then known as " Birds of a Feather," but which was later changed to " Cheating Cheaters," and delivered the same to Woods. Prior thereto and on May 4, 1916, the defendant Marcin, claiming to be the sole creator and author and sole owner of the play " Cheating Cheaters," which was the completed play contemplated by plaintiff's intestate and Marcin, and in the writing of which they had collaborated prior to Ongley's death, had entered into a written agreement with the defendant Woods whereby the defendant Marcin granted to the defendant Woods the sole and exclusive right to produce said play in consideration of the payment to the author by the producer of certain agreed royalties upon the gross weekly box office receipts

derived from the performances of said play upon the stage; and in and by said written agreement the producer also acquired the sole and exclusive right not only to produce said play upon the stage, but also in motion pictures, and in consideration of the moving picture rights thus acquired was to pay the author fifty per cent of all moneys received by him from moving picture purposes. When the writing of the play was completed and the same was delivered, Woods proceeded to produce the play, advertising the defendant Marcin as sole author. Plaintiff protested against such action and demanded that the authorship of her intestate be recognized and that a proper proportion of the royalties received from the play be paid to her. The defendants refused to accede to plaintiff's demand in either respect. The play as produced by Woods was a financial success. The defendants having refused to account to the plaintiff for any part of the royalties received from the producing of said play, the present action was brought to compel the defendants to account for the moneys received from said play. The theory upon which the plaintiff based her claim to be entitled to a share in the royalties earned from the production of said play was that her intestate and the defendant Marcin were joint adventurers and that the said defendant was in duty bound upon the death of her husband to carry out the joint venture in which they had engaged and to pay to the estate which she represented a proper share of the moneys received for such royalties.

The defendants answered separately, denying the material allegations of the plaintiff's complaint, and finally took the position that the defendant Marcin was the sole originator and author of the play and that he had conceived and written it in every respect and that the plaintiff was not entitled to any share in the proceeds therefrom.

The issues came on for trial at Trial Term, and upon motion of the defendants, plaintiff's complaint was dismissed. On appeal to this court (*Ongley* v. *Marcin,* 180 App. Div. 685) the judgment at Trial Term was reversed, and this court unanimously held that plaintiff's intestate and the defendant Marcin were engaged in a joint venture, and that Marcin, in violation of his duty to his coadventurer and to the plaintiff, appropriated the play, the plot of which was originated by plaintiff's intestate, completed the writing thereof and claimed sole authorship thereof and ownership therein; that the defendant Woods co-operated with the defendant Marcin in producing the play in disregard of plaintiff's rights; and that the plaintiff was entitled to an accounting as against the defendant Marcin. In the opinion of this court it was stated: " Doubtless for the additional work performed by Marcin after

the death of Ongley in completing the play Marcin would be entitled
to an allowance by way of compensation, but that question is not
now presented for decision."

The order of reversal of this court directed a new trial of the
issues.   Thereafter, by stipulation of the parties, Hon. EDWARD W.
HATCH, a former justice of this court, was duly appointed a referee
to hear, try and determine all the issues of fact and law arising in
said action.   The matter was heard before ex-Justice HATCH and
he made and filed his decision thereon, deciding that the contract
between plaintiff's intestate and the defendant Woods was not a
contract for personal services of the plaintiff's intestate, but was a
contract to write and deliver a play, which was not abrogated by
the death of Ongley; that plaintiff's intestate and the defendant
Marcin became and were engaged in a joint adventure in the
writing of said play; that the defendant Marcin wrongfully and in
violation of his duty as coadventurer and to the plaintiff as personal
representative of her deceased husband, appropriated the play
" Birds of a Feather," claiming the sole authorship thereof; that the
defendant Woods, with full notice and knowledge of all the rights
of the plaintiff and her intestate, wrongfully and in violation of
said rights and interests connived and co-operated with the said
defendant Marcin in appropriating and producing the play " Birds
of a Feather " as " Cheating Cheaters " and as the sole creation and
literary work of the defendant Marcin, and in advertising the said
Marcin as sole author of said play and paying him all royalties
from the production thereof; that the said defendant Marcin had
no right, title or authority to sell, transfer or assign to the defend-
ant Woods the said play or any interest therein to the exclusion
of the plaintiff from participation therein as the representative of
her deceased husband.   The learned referee also found that the
plaintiff was entitled to judgment and that the defendants, and each
of them, should account for the moneys and profits made and
received by each of them as royalty or otherwise from the pro-
duction and presentation of the play " Cheating Cheaters; " and
that the defendants " pay over to the plaintiff her just and lawful
proportion of the royalties accruing from the production and pre-
sentation of said play, as the same may be determined by the final
judgment of the court herein."   The learned referee upon such
decision directed that an interlocutory judgment be entered and
" that the final judgment therein determine and adjudge *the amount
of the recovery,* or *proportion of the profits* which has accrued and
been received by the defendants   *   *   *   which shall be awarded
to and paid to the plaintiff *and the portion* accruing from future
productions thereof shall be awarded to and paid to her, and that

such final judgment shall be settled by a justice of the Supreme Court or by a referee appointed by said court." (Italics are the writer's.) In connection with said decision the referee rendered an opinion wherein he referred to the dictum of this court that for the additional work performed in completing the play by reason of the death of Ongley, the defendant Marcin would doubtless be entitled to compensation by way of allowance. The referee, however, held that in disposing of that question by him there was no basis in the evidence presented upon which such an allowance could be made. Interlocutory judgment was entered upon the report of the referee, and therein the defendants and each of them were ordered and directed to " account to plaintiff for the moneys and profits made and received by each of them as royalty or otherwise from the production and presentation of the play ' Cheating Cheaters ' and that defendants, and each of them, pay over to the plaintiff herein her just and lawful proportion of the royalties accruing from the production and presentation of said play as the same may be determined by the final judgment of the Court herein." Thereafter, upon application to the court, by an order granted January 29, 1923, Abraham Benedict was appointed referee to take and state the account between the parties. The referee thus appointed then proceeded to take the account, and in that connection, under objection of the plaintiff, received evidence as to the activities of the defendant Marcin in relation to the production of said play subsequent to the death of plaintiff's intestate. A large amount of testimony was given upon this question. Evidence was presented to the referee to the effect that after the death of Ongley, Marcin, at great labor, proceeded to write the play, rewriting much of that which had been written prior to Ongley's death and at great pains and labor and under the critical supervision and exacting requirements of the defendant Woods and to meet the latter's views completing the second act and writing two more acts in full, making four acts of the play; that what had been done prior to Ongley's death was virtually discarded, new characters other than those contemplated when Ongley was living were introduced; and that the play as finally written was the sole production of the defendant Marcin. The defendant Marcin contended and still insists that the great amount of labor which he alone and unaided devoted to the writing of the play was of a character which he was not called upon to perform in order to complete the joint adventure upon which he and Ongley had embarked prior to the latter's death. In his answer the defendant Marcin denied all right of the plaintiff to participate in the proceeds from the play, and upon the trial before ex-Justice Hatch claimed to be the sole owner of the play. This

court held that he was a coadventurer with Ongley and that plaintiff was entitled to the accounting asked, this court indicating, however, that upon such accounting the defendant Marcin would be entitled to an allowance by way of compensation for the work which he did after Ongley's death. The referee to take and state the account, in disregard of the plain suggestion of this court, and, as we think, in disregard of the evidence before him, has denied the defendant any allowance whatever, and because of what the learned referee conceives was bad faith on the part of Marcin in claiming sole ownership in the play, as finally produced by him and in claiming the proceeds thereof, made no allowance whatever. The referee found as matters of fact that in completing said play produced as " Cheating Cheaters " defendant Marcin did so for his sole benefit and with the intention of claiming, collecting and retaining for his own use all proceeds of the authorship and ownership of said play in violation of his agreement with Ongley, dated January 29, 1915, and in violation of the agreement between Ongley and Woods, dated January 20, 1915; that the act of Marcin in completing said play was not a winding-up in good faith of the joint adventure for the benefit of Marcin and the estate of his coadventurer, Ongley, but instead was done in breach of his contract with Ongley under a wrongful and fraudulent claim that said Marcin was the sole author and owner of said play, and as such was entitled to the entire royalties and proceeds of said play as author, and for the purpose and with intent to defeat the plaintiff's rights; that the acts of the defendants Marcin and Woods in entering into the contract of May 4, 1916, which contract was made subsequently to the death of plaintiff's intestate, and in producing said play " Cheating Cheaters " with defendant Marcin as the sole author, were done as the result of a deliberate scheme on the part of both defendants to deprive Ongley and his estate and the plaintiff of all royalties, profits and benefits to which they were entitled, under said contract between Ongley and Woods, and under the contract between Ongley and Marcin. The referee further found that Marcin had devoted a good deal of time to the work of writing " Cheating Cheaters," and carried to the extent of four acts a play which on Ongley's death had been put into concrete form only to the extent of one and one-half acts; that many changes were made by Marcin in the play; that necessary dialogue had been written and revised again and again; and that at least two new characters were introduced by him; and that the reasonable value of his services therefor in excess of what he would have been required to perform had Ongley lived was $1,000. However, the referee did not allow Marcin anything for said extra services. In view of the proof the

amount thus arbitrarily fixed by the referee was absurdly inadequate. As before stated, we think the decision of the referee denying the defendant a proper allowance for his extra labors was contrary to law and against the clear weight of the evidence before him. (*Consaul* v. *Cummings*, 222 U. S. 262; *Greenslete* v. *Ferguson*, 191 App. Div. 745.) It is claimed that the referee appointed to take and state the account was without power to receive evidence as to the activities of the defendant Marcin in writing the play after the death of Ongley with regard to his claim for extra compensation, and that any claim which Marcin might have had should have been established before ex-Justice HATCH on the first reference, and that the decision therein and the interlocutory judgment established Marcin's rights. With such contention I am unable to agree. This court clearly indicated that upon an accounting the defendant Marcin would be entitled to an allowance for such work. Ex-Justice HATCH, in his opinion, recognized the right to such an allowance, but made none for the unanswerable reason that there was no basis therefor in the evidence before him. In his decision ex-Justice HATCH did not find that the defendant Marcin was not entitled to an allowance, but required the defendants to account for the moneys received " and pay over to the plaintiff *her just and lawful proportion* of the royalties accruing " as the same might be determined by the final judgment of the court. *This was far from holding that plaintiff was entitled to one-half of such royalties.* And in the interlocutory judgment entered on the report of said referee it was adjudged that the defendants should pay over to the plaintiff not half of the royalties, but " her just and lawful *proportion* of the royalties accruing; " and in the said interlocutory judgment it was finally " Further Ordered, Adjudged and Decreed that the final judgment therein determine and adjudge the amount of the recovery, or proportion of the profits which has accrued and been received by the defendants from the production of the play ' Cheating Cheaters,' which shall be awarded to and paid to the plaintiff and the proportion accruing from future production thereof shall be awarded to and paid to plaintiff, and that such final judgment shall be settled by a Justice of the Supreme Court, or by a referee appointed by said Court."

I do not think it can be said that the interlocutory judgment herein in anywise precluded the defendant Marcin from thereafter asserting his claim. On the contrary, the whole matter of the accounting between the parties was left open for further determination when the claim of Marcin might be passed upon under such evidence as might be presented, and when the plaintiff might be awarded the " *just* and lawful *proportion* of the royalties," as

the same might be determined. The trial before said referee was in no sense an accounting, was not so regarded by the learned referee; and no attempt was made to take or state any account between the parties. The interlocutory judgment merely directed that the defendants account and pay over to plaintiff " her just and lawful proportion of the royalties," and left to the final judgment the determination and adjudication of the *amount of plaintiff's recovery* or proportion of the profits already accrued and received by the defendants, and *the proportion* accruing from future production of the play, to be settled by a justice of the Supreme Court or a referee appointed by the court. The defendants, therefore, never had their day in court so far as an accounting was concerned until after the entry of said interlocutory judgment. In furtherance of the interlocutory judgment the referee was appointed to take and state the account between the parties.

There is no dispute as to the amount of the royalties received, as the account thereof was stipulated at the trial before the last referee. The referee found that, under the account as rendered by the defendant Woods and corrections made, the royalties and revenues due to the estate of Ongley and the plaintiff, less $500 advance royalties paid by Woods to Ongley, amounted to the sum of $28,915.72; and that Woods was indebted to the plaintiff in that amount, with compound interest. The referee also found that Woods' liability for said amount was secondary to that of the defendant Marcin to the extent of $24,731.17, with compound interest, and that for the difference after the addition of compound interest to each of the principal sums, Woods was primarily liable to the plaintiff; that when he paid to Marcin the aforesaid $24,731.17, Woods knew that the money was payable to the plaintiff and that Marcin claimed and received it for himself and not for or on account of the plaintiff, and that in making the payments Woods colluded with Marcin to defeat the plaintiff's rights; that the difference between $28,915.72 and $24,731.17, or $4,184.55, was the sum payable to the plaintiff which was retained by Woods. The referee stated the account with Marcin as follows: That he was indebted to the plaintiff in the sum of $24,731.17, with compound interest, and was entitled to no credits. The referee found as the aggregate sum to which the plaintiff was entitled the sum of $28,915.72, and that the plaintiff was entitled to interest on $24,731.17 thereof at six per cent per annum calculated with annual rests upon each item from the date of its receipt by the defendant Marcin to the date of entry of final judgment.

The court in making the order appealed from, in an opinion rendered, held that the referee had exceeded his authority in making

First Department, November, 1925. [Vol. 214

the findings of fact and conclusions of law with reference to the defendant Marcin; and that all the referee was required to do was to take and state the account between the parties. I am unable to see how the referee could determine the amount due the plaintiff without taking evidence with relation to the claims of the defendant Marcin. This court had suggested that doubtless Marcin was entitled to an allowance for the work which he performed subsequently to the death of Ongley. When the case was before ex-Justice HATCH he referred to that same question, but stated that there was no evidence before him upon which that matter could be determined. At the trial before the referee to state the account, Marcin made claim to an allowance for the work performed by him. The referee found; in view of his bad faith and attempted appropriation of the work of plaintiff's intestate, he was not entitled to any such allowance, and that the defendant Woods had participated in the attempt to appropriate the work of plaintiff's intestate; and such wrongful acts were made by the referee the basis of denying Marcin such allowance. Not only did the referee err in turning the defendant Marcin away without a substantial allowance, but we think the referee erred in several respects justifying the court below in refusing to confirm his report. The referee allowed the plaintiff compound interest upon the sums found to be due the plaintiff. This was clearly error. The plaintiff would in any event be entitled to simple interest only upon the sums found her due. We also think the referee erred in granting plaintiff an extra allowance of costs. The referee was without power to make an extra allowance. (See Civ. Prac. Act, § 1513.) The referee erroneously deducted $500 from the sum found due plaintiff. The allowance should have been $250, as Ongley paid Marcin $250 of the $500 paid by Woods.

The court at Special Term, by the order appealed from, on refusing to confirm the report of the referee, referred the matter to Hon. M. Warley Platzek, an official referee, to take and state the account between the parties. We are of the opinion, for the reasons hereinbefore stated, that the court below properly sent the accounting to a new referee. Inasmuch as the amount of royalties received and for which an accounting is to be had is agreed upon, the duties of the official referee will not be onerous, all that need be litigated being as to the work done by Marcin following Ongley's death, for which he should be compensated, and the amount which he should be allowed therefor, thereby enabling the referee to determine the just proportion of the accrued profits to which the plaintiff is entitled.

The order appealed from, in so far as it sets aside the referee's

report and refers the accounting to the official referee, should be affirmed, with ten dollars costs and disbursements to the defendants. In so far as appealed from by the defendant Marcin, the order should be reversed. On the appeal of the defendant Woods, said order should be affirmed in so far as it allows simple interest only on the amount found due by the referee from defendants to the plaintiff.

DOWLING and McAVOY, JJ., concur; CLARKE, P. J., and MARTIN, J., dissent.

CLARKE, P. J. (dissenting):

This is an action in equity for an accounting and an injunction. Upon the first trial the complaint was dismissed upon the opening. The judgment rendered thereon was reversed by this court in 180 Appellate Division, 685, and a new trial ordered. The new trial was had before the late former Justice EDWARD W. HATCH, as referee, who made a decision in favor of the plaintiff. Said decision contained the following conclusions of law:

" 1. That the contract between George Byron Ongley and the defendant, Al H. Woods, dated January 20, 1915, and set forth in the Seventh finding of fact hereof is not a contract for the personal ervices of said Ongley, but is a contract to write and deliver a play and it was not abrogated by the death of said Ongley. * * *

" 3. That plaintiff's intestate, George Booth Ongley (George Byron Ongley) and the defendant, Max Marcin, became and were engaged in a joint adventure in the writing of the play referred to and described in the foregoing findings of fact.

" 4. That the defendant, Max Marcin, wrongfully and in violation of his duty to his co-adventurer and to the plaintiff as personal representative of the latter, appropriated the play ' Birds of a Feather ' claiming the sole authorship thereof.

" 5. That the defendant, Al H. Woods, with full notice and knowledge of the rights and interests of plaintiff and her intestate, wrongfully and in violation of said rights and interests, connived and co-operated with the defendant, Max Marcin, in appropriating and producing the play ' Birds of a Feather ' as ' Cheating Cheaters ' and as the sole creation and literary work of the defendant, Max Marcin, and in advertising said Max Marcin as sole author of said play and paying him all the royalty accruing from the production thereof.

" 6. That the defendant, Max Marcin, had no right, title, or authority to sell, transfer or assign to the defendant, Al H. Woods, the play ' Birds of a Feather,' or any interest therein and exclude

30

the plaintiff from participation therein as the representative of the deceased Ongley.

" 7. That the plaintiff is entitled to judgment; that the defendants and each of them account for the moneys and profits made and received by each of them, as royalty or otherwise, from the production and presentation of the play ' Cheating Cheaters,' and pay over to the plaintiff her just and lawful proportion of the royalties accruing from the production and presentation of said play, as the same may be determined by the final judgment of the Court herein; enjoining and restraining the defendant, Al H.· Woods, from hereafter paying to the defendant, Max Marcin, any money, as royalty or otherwise, received or accruing from the production and presentation of said play, ' Cheating Cheaters,' and enjoining and restraining the defendant, Max Marcin, from receiving any of such money from the defendant, Al H. Woods, or from any other person; enjoining and restraining the defendant, Al H. Woods, from hereafter advertising, or causing to be advertised, the name of the defendant, Max Marcin, as sole author of the play ' Cheating Cheaters,' and directing that in all advertising of said play hereafter, and in all advertising used in connection with the production or presentation of said play in relation to the authorship thereof the names of both George Booth Ongley and the defendant Max Marcin shall appear as authors.

" I direct that an interlocutory judgment be entered accordingly, with costs of the action, which are hereby awarded to the plaintiff against the defendants, to be taxed and entered in the final judgment; that the final judgment therein determine and adjudge the amount of the recovery, or proportion of the profits which has accrued and been received by the defendants from the production of the play ' Cheating Cheaters,' which shall be awarded to and paid to the plaintiff and the portion accruing from future productions thereof shall be awarded to and paid to her."

Judgment was entered thereon directing that the defendants and each of them account to the plaintiff for the moneys and profits received by each of them as royalty or otherwise from the production and presentation of the play " Cheating Cheaters " and that the defendants and each of them pay over to the plaintiff herein her just and lawful proportion of the royalties accruing from the production and presentation of said play, as the same may be determined by the final judgment of the court herein.

In his opinion the learned referee stated: " The result of the conclusion arrived at in these cases seems to establish that the plaintiff is entitled to an accounting of the profits which have been made from the production of this play. The Appellate Division

in reaching its conclusion intimated that for the additional work performed in completing the play, by reason of the death of Ongley, the defendant Marcin might be entitled to compensation by way of an allowance.   In disposing of this question, however, there is no basis in the evidence upon which such an allowance can be made. No such claim is made by either defendant; the position of both defendants is that Ongley never contributed anything, either by way of the origination of the plot, or otherwise, as it was finally produced.   The attitude of both is that Marcin originated, wrote and sold to Woods, and Woods produced an entirely different play, and as produced it presented nothing contributed by Ongley, either by way of origination or composition.   In other words, the position of both is that the play produced by Woods was an entirely different play from that referred to in the contract between Ongley and Woods, and the contract between Ongley and Marcin, to which Woods consented.   This contention, as appears by our findings, we have rejected, holding that Ongley contributed work by way of origination and actual writing of an act and a half of the play, then called ' Birds of a Feather; ' that such act and a half was appropriated by Marcin and formed a part of the play ' Cheating Cheaters,' as it was finally produced.   It is probably true that Marcin and Woods could have terminated the contracts above mentioned after the death of Ongley and might have claimed compensation by way of an allowance to Marcin for the work which he did and which was made necessary by the death of Ongley, but manifestly, under the decisions above cited, he could not deprive the plaintiff from insisting upon right to a participation in the profits.   It became Marcin's duty as a joint adventurer with plaintiff's intestate to complete the contract and to account for the profits ultimately secured through their joint efforts.   This duty he owed to the deceased.   Consequently, when he appropriated the labors of his coadventurer and produced the play, he was bound, acting in good faith, to account for the profits.   This he did not do, but, on the contrary, both he and Woods, with full knowledge of the situation, made use of the work done by plaintiff's intestate and undertook to exclude plaintiff, as the representative of the deceased, from participation in the profits which have been made.   The labor of the deceased produced a part of this play, and an essential part, without which, as it was finally presented, it would have been incomplete.   There was nothing in the contract between Ongley and Marcin which required either to do a particular portion of the work necessary to the production of the play; it was the play which was the subject of the contract between Woods and the deceased; that was produced

and Ongley made a substantial contribution thereto. Such contribution made the completed play; without it, it cannot be said that the play would have been produced, and, if produced, that it would have been successful. There is, therefore, no basis in the evidence upon which to found any allowance to Marcin for work which he did, in addition to that which had been done by his coadventurer prior to his death. The conclusion is irresistible that both defendants were fully acquainted with the situation as it existed at the time of Ongley's death and with full knowledge of such facts both defendants appropriated the work done by Ongley and both defendants have denied to him all right of participation in the profits which have been earned and have also refused to advertise him as co-author with Marcin, both of which rights were secured to him by the terms of his contracts with both defendants."

In my opinion the interlocutory decree settled the facts and the law of this case and the only matter thereafter open was the taking of the account in pursuance of the provisions of the interlocutory judgment. Thereafter an order was entered appointing a referee to take the account as provided for in that interlocutory judgment. The figures were presented to the referee and he made a report which the learned Special Term has set aside and made a new order of reference. I think this was error and that the court should have corrected the account so far as two matters were concerned which presented questions of law only. The referee allowed compound interest. We find no warrant in law for this and the account should have been corrected in that regard. He also certified that it was a difficult and extraordinary case and ordered an extra allowance of $1,800. This he had no authority to do. Application for an extra allowance could only have been granted by the court and it was not within the province of the referee to do more than certify that in his opinion it was a difficult and extraordinary case. The attempt was made before him to retry questions which in my opinion were finally decided by the interlocutory judgment, and the order setting aside the referee's report and ordering a new reference is for the purpose of taking evidence of matters which in my judgment were completely and definitely settled by the interlocutory judgment. I think an end should be put to this litigation. It already has been very costly and long drawn out. The court can and should correct the two errors pointed out in the report of the last referee. I dissent from the affirmance of the order appealed from and vote to correct the referee's report as indicated, and, as corrected, to affirm the same.

MARTIN, J., concurs.

Order so far as it sets aside the referee's report and refers the accounting to the official referee affirmed, with ten dollars costs and disbursements to the defendants; so far as appealed from by the defendant Marcin, the order is reversed. On the appeal of the defendant Woods, order affirmed in so far as it allows simple interest only on the amount found due by the referee from defendants to the plaintiff. Settle order on notice.