POTTER v. SACHS.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

1. MORTGAGES—FORECLOSURE—PURCHASE BY TRUSTEE'S WIFE.

The title acquired by a married woman by purchase at a foreclosure sale of premises on which her husband holds a second mortgage as trustee is not voidable, as equivalent to a purchase by the husband, for he has no control over his wife's estate.

2. VENDOR AND PURCHASER—NOTICE.
    A purchaser of realty is chargeable with the constructive notice which
    the law imputes to the records, and not with everything he might learn
    from an examination of all papers connected with the title.

Action by Eugene Clifford Potter against Fabian Sachs for specific performance of a contract for sale of realty. Submitted on agreed statement of facts under Code Civ. Proc. § 1279. Judgment for plaintiff.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Flamen B. Candler, for plaintiff.
J. Frankenheimer, for defendant.

VAN BRUNT, P. J.    On the 25th of November, 1891, one William Eisenberg, being seised of the premises in question, in fee, executed, together with his wife, a mortgage thereon to James Gordon Bennett and William Jay, as surviving trustees of Isaac Bell, deceased, to secure the sum of $26,000. Subsequently, on the 15th of December, 1891, said Eisenberg conveyed the said premises to one Ulman; and thereafter Ulman and wife mortgaged said premises to one Hanna Wolfe to secure the sum of $4,500. On the 14th of February, 1892, Hanna Wolfe assigned the last-mentioned mortgage to John Zorn, as sole surviving executor and trustee under the will of Johann Baptist Baader. Thereafter, default having been made in payment of the interest on the mortgage held by said Bennett and Jay as trustees, an action was brought by them on the 27th of January, 1893, to foreclose the same, in which action John Zorn, as sole surviving executor and trustee of Johann Baptist Baader, was made a party defendant, and was duly served with the summons and complaint, and duly appeared in such action by attorney. Such proceedings were had therein that on the 20th of April, 1893, a judgment of foreclosure was entered; and on the 9th of June, 1893, the premises were sold at public auction, by the referee named in the decree of foreclosure, to Frances Zorn, wife of the said John Zorn, for the sum of $29,050, she being the highest bidder therefor. The referee subsequently conveyed said premises to said Frances Zorn by deed dated and recorded June 29, 1893. As part of the consideration for the purchase of said premises, the said Frances Zorn and John Zorn executed and delivered to said Bennett and Jay, as trustees, a purchase-money mortgage in the sum of $26,000, dated and recorded on the same day as said deed. The balance of the purchase price, $3,050, was paid by said Frances Zorn in cash. Part thereof was used by the referee in payment of the expenses of the sale, of the interest due on the mortgage foreclosed by said trustees, the costs of the foreclosure suit, and taxes and water rates; and the balance, amounting to $336.90, was deposited by the referee in the office of the chamberlain of the city of New York, as required by the foreclosure judgment. The referee duly made his report of sale, which was duly filed in the office of the clerk of the county of New York on the 3d of July, 1893; and an order was subsequently made and entered, upon consent of all the parties to the action,

confirming said report. In March, 1894, Frances Zorn, in consideration of $1 and exchange of property, conveyed the premises in question and other property to Daniel E. Norcross by deed dated March 9, 1894, and recorded March 13, 1894, and thereupon delivered possession of said premises to said Norcross, who on the 16th of April, 1894, together with his wife, conveyed said premises to Frank W. Belmont by deed dated and recorded April 16, 1894. On or about April 20, 1894, Belmont and wife, in consideration of $1 and exchange of property, conveyed said premises to the plaintiff herein by deed dated and recorded April 20, 1894, subject to said mortgage of $26,000 and interest. The plaintiff was the purchaser of the premises in good faith, for value, and without any notice whatsoever, save such notice as the law might impute to him from the matters of record above set forth. The plaintiff thereupon went into possession of the premises, collected the rents, issues, and profits thereof, and paid the taxes and insurance on said premises, and the interest on said mortgage. The submission also contains the provisions of the last will and testament of Johann Baptist Baader, deceased, under which the said John Zorn was the sole surviving executor and trustee. In February, 1896, an order was duly made and entered by one of the surrogates of the county of New York revoking the letters testamentary issued to said Zorn, and appointing Bernard H. Arnold as substituted trustee. Said Arnold duly qualified as such substituted trustee, and thereafter filed a claim to the surplus money deposited with the chamberlain as aforesaid; and such proceedings were had that such surplus money was awarded to said Arnold as substituted trustee, and subsequently paid to him by the chamberlain. On the 20th of February, 1899, the plaintiff entered into a contract with the defendant for the sale and purchase of the property in question. At the time of the execution and delivery of said contract, the defendant paid to the plaintiff the sum of $1,000.

The defendant objects to the title because the wife of John Zorn, the trustee under the last will and testament of Johann Baptist Baader, and the holder of the second mortgage upon said premises, became the purchaser at the foreclosure sale of the first mortgage as above stated; and the question submitted here is whether such objection is well founded. There seems to be no question that, prior to the deprivation of a husband of all right and interest in his wife's real estate, the objection in question would have been considered to be of such character as would, if known to the purchaser, render the title unmarketable. The reason of this rule undoubtedly was that the husband, during the lifetime of the wife, could reduce to his own possession the personal property of his wife, and was entitled to the possession of her real estate, and to the rents, issues, and profits thereof, and upon her death, if they had had living children, to such possession and to such rents, issues, and profits during his life; and he would therefore, to a certain extent, be the actual purchaser, she having, without his consent, no means whatever which she could devote to such purpose. But it is difficult to see how, under the present condition of the law, any such rule can be invoked.

The wife has the absolute control of her personal and real estate. She may dispose of it as she pleases,—even contrary to the will of her husband. If she desires to purchase real estate, her husband has no power to prevent, as he has no control either of her actions or of her estate. Under these circumstances, the reason of the rule which previously existed has entirely disappeared. There is no relation existing between husband and wife which prevents the wife from doing that which she pleases with her own. A woman is placed under no disability by reason of coverture. She is now the absolute mistress of her own property. She may invest it as she pleases; she may sell it as she pleases; and unless it is shown that some wrong has been done by her conniving with her husband, which has come or ought to have come to the knowledge of the purchaser, it seems to us that he gets a perfect title.

Furthermore, it appears that the purchaser in this case had no knowledge, except such as an examination of the records would have disclosed, of the existence of the alleged cloud upon the title. It is urged that, as an examination of the records with reference to this title might have disclosed these facts, knowledge thereof is imputed to him, upon the ground that every purchaser of real estate is presumed to have examined the title, and is presumed to have knowledge of every fact disclosed by the record, or to which an inquiry suggested by the record would have led. And the case of Moot v. Association, 157 N. Y. 209, 52 N. E. 1, is cited to support this proposition. An examination of that case shows that no such proposition as is contended for was announced by the court. In the case cited, the contract provided for the delivery of a deed conveying a good and satisfactory title on a certain day, and making time of the essence of the contract. It also contained a provision that the vendor would furnish a search truly showing the condition of the title. Such a search was furnished, which presented an apparent discrepancy of description, but was accepted by the purchaser without objection. On the day for performance the vendor duly tendered a deed, and the purchaser rejected the same upon the ground that the vendor's title was not satisfactory, and that the insufficiency of the search furnished was a breach of the contract. Upon the day for performance, the vendor actually had a good title; the apparent defect having been duly amended in the judgment roll, which the purchaser would have discovered, had he made an examination of the title. It was held that the purchaser would not be released from his contract, and would not be allowed to recover the portion of the purchase price paid by him, and his disbursements for examining the title; and it is in this connection that the court uses the language quoted. It is clear that all that the court intended to say was that where a party offers an objection to a title, which upon an examination of the record will be shown to have been obviated, he is in no condition to avail himself of the apparent defect. Records give constructive notice to the extent provided by the statute and rules of law, but no further. A party has the right at his own risk to purchase the title to premises without examination. He has that constructive notice which

the law imputes, not of everything that he might have learned had he read all the papers connected with the title.

We are therefore of opinion that the title proffered to the defendant was good, so far as the objection taken was concerned, and that the plaintiff is entitled to judgment. Judgment ordered accordingly, with costs. All concur.