(47 App. Div. 343.)

TAYLOR v. KLEIN.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

1. INSANE PERSONS—SALE OF PROPERTY—PURCHASE BY TRUSTEE.
    Plaintiff, while committee for a lunatic, bought, at a fair price, in the name of his wife, land of the lunatic, sold at partition sale, which his wife then conveyed to plaintiff through an intermediary, for a nominal consideration. Subsequently, in proceedings to which the lunatic was not made a party, plaintiff's account was approved by the court, and he was discharged, and another appointed, who received the proceeds of the sale. *Held* that, the partition sale being in fact to the plaintiff, he took only a voidable title, for which he was liable to account to the beneficiary.

2. SAME.
    A valid title was not conferred by the court's approval of his accounts, nor by the receipt of the proceeds of the sale by plaintiff's successor.

Action by Moses W. Taylor against Emil Klein. Submitted on agreed statement of facts. Judgment for defendant.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

W. Popham Platt, for plaintiff.
John Frankenheimer, for defendant.

HATCH, J.  By descent from their father, Oscar and Gilbert Hatfield took title to an equal, undivided interest in certain real property, a part of which is the subject of this submission.  Subsequently Oscar was adjudged to be a lunatic, and the plaintiff was duly appointed and qualified as a committee of his person and estate, and discharged the duties of such relation.  Gilbert transferred title to his undivided share in the property, and after the appointment of the plaintiff as committee his grantee brought an action for the partition of the premises.  This action proceeded to judgment, and pursuant thereto a sale of the property was had.  Upon such sale the plaintiff bid in the property which is the subject of this submission, in the name of his wife, and signed the following contract of purchase:

"I have this 10th day of May, 1881, purchased lot No. 1 of the premises described in the annexed printed advertisement of sale, for the sum of $2,200, and hereby promise and agree to comply with the terms and conditions of sale of said premises as above mentioned and set forth.

"[Signed]                              Jane Taylor,
                                   "By Moses W. Taylor.

"Dated May 10th, 1881."

Thereafter, on February 23, 1885, the plaintiff's wife, who had received the referee's deed upon the sale in partition, conveyed the same to the plaintiff, through an intermediary, for the nominal consideration of $1.  There was no clause in the judgment authorizing the plaintiff to become a purchaser at the sale.  The sale was fairly made, and the property brought its fair value.  Thereafter, and in April, 1888, the plaintiff petitioned the supreme court to be discharged as the committee of the incompetent person, and presented his account for settlement.  The heirs and next of kin of the incompetent person were made parties to such proceeding, and they each examined the account of the committee, approved of the same, and each executed a release discharging the plaintiff from all liability for and on account of his acts as such committee.  It does not appear that the incompetent person was represented upon such accounting, or that the court appointed any person to care for his interest thereon.  The proceeds of the sale of the real property were accounted for upon the proceeding, the court passed the account, and a decree was entered discharging the plaintiff as such committee, and directing the payment over of the moneys in his hands to a new committee, who was thereafter appointed.  The plaintiff complied in all respects with this decree.  On April 20, 1889, plaintiff contracted to sell the property purchased at the partition sale to the defendant.  Upon a tender of the deed of the premises the defendant refused to fulfill his contract or accept the deed, claiming that the plaintiff, as the trustee of the lunatic, had no right to purchase the premises; that his wife occupied such relation to him that she was not authorized to become a purchaser at such sale; that the title thus obtained is voidable, and subject to be set aside at the instance of the lunatic or his representatives.

So far as the plaintiff is concerned, it is not contended but that he was prohibited from purchasing for his own benefit at the par-

tition sale; that a purchase by him inured to the benefit of his cestui que trust, and was subject to be set aside at the instance of the cestui que trust, or other persons deriving interest through him. Upon the agreed statement of facts it would seem that the purchase was in fact made by the plaintiff. True, the title was taken in the name of his wife, but it appears that she did not act in person, nor did she execute any contract. The plaintiff made the purchase, signed the contract of sale as agent for his wife, and subsequently, by means of an intermediary, obtained title to the premises for the nominal consideration of $1. Under the facts, therefore, we must treat this sale as having been made to the committee; and, within well-settled rules of law, such a purchase does not vest in the trustee an indefeasible title. It inures to the benefit of the cestui que trust, and for it and its proceeds he is bound to account. In this respect the case is entirely different from that of Potter v. Sachs (Sup.) 61 N. Y. Supp. 426, and therefore it is not to be regarded as an authority controlling of this case.

If we assume that the sale is to be treated as having been made to the wife, we are of opinion that the result will not be changed. It is the settled equitable rule that parties who are placed in a situation of trust and confidence with reference to the subject-matter of the purchase are not authorized to buy and hold such property to their individual use; and this rule embraces trustees of all descriptions, extending to those who become such ex maleficio, and to all other persons who occupy such a relation to the trustee as to subject them to the implication that the trust relation may be abused if the act is supported. This doctrine has been held to embrace wives, partners, and clerks. Van Epps v. Van Epps, 9 Paige, 237; Gardner v. Ogden, 22 N. Y. 327; Fulton v. Whitney, 66 N. Y. 548; Bennett v. Austin, 81 N. Y. 308, 1 Perry, Trusts, § 209. The only exception to the rule authorizing a trustee to deal with the property, whereby a right to purchase may be obtained, is by application to the court upon proof of all the facts, and procuring to be entered by the court a decree authorizing the same. Scholle v. Scholle, 101 N. Y. 167, 4 N. E. 334. It must follow that persons who would be excluded, by reason of their confidential relation to the trustee, from purchasing, would require similar authority. The relation which exists between husband and wife is of so confidential and intimate a character that in respect to dealings had between them, or by either for the other, it is to be assumed that such dealings are for the mutual benefit of both, or for the interest of the one in whose behalf a transaction is consummated. In fact, the unity of the husband and wife still continues, except so far as the same has been abrogated by statute. Bertles v. Nunan, 92 N. Y. 152; Wetmore v. Wetmore, 149 N. Y. 520, 44 N. E. 169. While the married women's statutes, so called, have abrogated the common-law disabilities under which the wife labored, yet the character of the marital contract is such that as to some of the relations between husband and wife, and their rights, liabilities, and duties, it precludes their abrogation unless the marital relation be destroyed. The basis for the rule which prohibited the wife of a trustee from becoming a purchaser of the property of the husband's cestui que trust did not rest upon any

right which the husband had in and to the property of the wife, as it existed at common law, or upon any property right whatever. The sole basis for the enforcement of such rule rested in the fact of the character of the relation. It is not alone intimate and confidential, but it is sacredly so, and the assumption of such relation presumes that thereafter the acts of one will be for the benefit and interest of the other. It is the temptation to abuse the trust relation, by reason of the intimate and confidential character of husband and wife, that was the inducing cause for the courts holding that it might not be sustained. Davoue v. Fanning, 2 Johns. Ch. 251. In Lingke v. Wilkinson, 57 N. Y. 445, the court sustained a dealing with the trust estate by a son of the trustee. But in that case the court took occasion to say, "The peculiar nature of the relationship between a husband and wife has been held to invalidate transactions resulting in the transfer of property, held in trust, to or for the benefit of the wife, and to prevent dealings between them affecting the subject of the trust," and cited with approval Davoue v. Fanning, supra, and Dundas' Appeal, 64 Pa. St. 325, where a similar transaction was condemned. See, also, Tyler v. Sanborn, 128 Ill. 136, 21 N. E. 193. It is the common knowledge of men, and has been the uniform experience of the courts, that the wife is the most common instrument to transmit through or transfer to property which the husband designs fraudulently to conceal. It is also common knowledge and common experience of the courts that the wife rarely proves faithless to the husband under such circumstances. There is no relation existing between individuals where opportunity is offered for more secrecy of transaction and a perfect understanding than between husband and wife. We are of opinion that to uphold the dealings of either with trust property held by one would go far to break down the rule, which cannot be too rigidly enforced, which prohibits a trustee from dealing with trust property for his benefit. The purchase, therefore, at the partition sale, if treated as a purchase by the wife, may not be upheld, and she took, as against the cestui que trust, a voidable title; and for such property the trustee became liable to account at the instance of the cestui que trust, or those deriving an interest from him.

Nor has this result been cured by the settlement of the trustee's accounts. It is probably true that, so far as the heirs and next of kin of the lunatic who have executed the releases to the committee are concerned, they would be estopped from raising any question as to the validity of the sale, because of such fact they had notice, and must be held to have ratified the same by consenting that the committee should receive the money. But at the time of this accounting the lunatic was alive, and, so far as appears from the record, is still living. The heirs and next of kin had no title to, or legal interest in, the estate of the lunatic. The legal title thereto was vested in him. Kent v. West, 33 App. Div. 112, 53 N. Y. Supp. 244. It does not appear that notice of the accounting was served upon him, nor was he represented by any person charged with the duty of caring for his interest. By section 2342 of the Code of Civil Procedure the lunatic is entitled to notice, and it is made the duty of the court to appoint a suitable person as a special guardian of

the incompetent person, for the protection of his rights and interests in the proceeding. The incompetent person is equally entitled to such notice and care upon an accounting which seeks to discharge the committee from his trust relation. Had the incompetent person been represented upon the accounting, undoubtedly the settlement of the accounts and the decree discharging the committee would have been final, and the same would operate as a confirmation of the acts of the committee, and therefore validate the purchase made at the partition sale. Rhodes v. Caswell, 41 App. Div. 229, 58 N. Y. Supp. 470. Nor do we think that the committee appointed to succeed the plaintiff can be held to have ratified the sale for and on account of the incompetent person by the mere acceptance of the money which the decree directed to be paid. As the incompetent person had no notice of the proceeding, as no person was appointed by the court to protect his interest, and as the new committee did not represent the incompetent person, except to receive the money, we are inclined to the view that the decree as entered did not preclude the committee or his representatives from subsequently attacking the transaction. It is not necessary, however, that we assert this doctrine as a conclusive rule of law at this time. It is sufficient to say that the title is open to a reasonable doubt, and as such is not marketable. Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905. As, however, the sale was open and fair, we have no doubt that upon a proper application, and proper notice to the incompetent person and his representatives, the court would now have power to ratify and confirm the sale. Having received and retained the proceeds of the sale without objection, it would seem that an equitable basis would be presented for the making of such an order. The appointment of the plaintiff as trustee of Hatfield was matter of record, and of such relation a purchaser was bound to take notice. The proceeding upon the sale in partition was also matter of record, of which like notice must be taken. Notice is not only to be taken of such facts as the record discloses, but the person is chargeable with all defects which the record shows, and is bound thereby. McPherson v. Rollins, 107 N. Y. 316, 14 N. E. 411. Moot v. Association, 157 N. Y. 201, 52 N. E. 1, cites the doctrine of the latter case with approval. 2 Pom. Eq. Jur. (2d Ed.) §§ 626, 627; 3 Washb. Real Prop. (5th Ed.) p. 347. The record showed this defect in the title, and such defect rendered the same unmarketable. People v. Open Board of Stockbrokers Bldg. Co., 92 N. Y. 98. It follows, therefore, that the plaintiff did not present to the defendant a marketable title, in consequence of which he was not required to take the title as tendered.

We have already observed that the circumstances appearing in this case are different from those which appeared in Potter v. Sachs, supra. Consequently it is not controlling of the present question, and we do not now commit ourselves to its doctrine.

It follows that judgment should pass for the defendant upon the facts admitted.

Judgment for the defendant upon agreed statement of facts, without costs. All concur.