MILLER et al. v. WEINSTEIN.

(Supreme Court, Appellate Division, First Department. June 22, 1900.)

VENDOR AND PURCHASER—EXECUTORY CONTRACTS—EXECUTOR'S SALE—PURCHASE BY WIFE—TITLE—SUFFICIENCY.

Where a wife, after passage of the married woman's act, depriving a husband of all right and interest in his wife's real estate, with her own money, and for full value, purchased lands of an estate sold by her husband as executor of a will, at auction sale, after extensive advertisement, for the highest of many spirited bids, and the proceeds were accounted for by the executor as part of the estate, she acquired a good and marketable title to such lands.

Controversy submitted between Charles H. Miller and another, as executors of the last will of Dorcas M. Crampton, deceased, and Morris Weinstein; the executors asking specific performance of a contract, and said Weinstein asking cancellation thereof. Judgment for the executors.

Argued before VAN BRUNT, P. J., and PATTERSON, McLAUGHLIN, RUMSEY, and INGRAHAM, JJ.

Hamilton Wallis, for plaintiffs.
Cyrus C. Miller, for defendant.

McLAUGHLIN, J. On the 10th of January, 1874, Jacob Miller died, leaving, him surviving, his widow, Jane M. Miller, and seven children, all of whom were of full age. He left a will, which was admitted to probate as a will valid to pass both real and personal estate, and letters testamentary were issued to Charles H. Miller, Henry E. Crampton, and Frederic G. Smedley, the executors therein named. By his will the testator devised all the rest, residue, and remainder of

his estate, which included the real estate the title to which is here in question, to his executors, or the survivor or survivors of them, in trust, with directions to sell the same as soon after his decease as practicable, and divide the proceeds arising from such sale into seven equal shares, one of which he directed to be paid over to each of his four children, Mary E., Dorcas M., Charles H., and Emma Z. The three other shares he directed his executors to retain in trust for the benefit of Jacob H., James E., and Jane A., and to apply the income to be received from the shares set apart for Jacob H. and James E. for the use of each of them during his natural life, and upon the death of each to convey and pay over the said share or portion to the issue of said son him surviving, and to pay the rents, issues, and profits from the remaining share to Jane A. during the lifetime of her husband, and, if she should die during that time, to apply the said share or portion to the use, maintenance, and support of her issue, and upon the death of her husband to pay over and convey to the said Jane A., if living, and, if not, to her issue, the whole of said share. The will further authorized and directed the executors to sell all or any of the testator's real or personal estate, together or in parcels, either at public or private sale, at such time and place, and subject to such stipulations, as to title or the payment of purchase money, as they should deem expedient or advisable, for the best interests of his estate. Pursuant to the power thus given, the executors proceeded to sell, at public auction, a number of parcels of real estate, including the parcel the title to which is questioned by this submission. The sale was extensively advertised in the daily newspapers in the city of New York, by handbills, and catalogues containing a diagram of the premises to be sold were distributed in the offices of real-estate dealers and investors in real estate in said city. At the time and place stated in the advertisement, June 1, 1875, at the Real-Estate Exchange Salesroom, in the city of New York, the several parcels advertised were offered for sale, through an auctioneer, and, after "a spirited bidding," the premises in question were sold to Dorcas M. Crampton (a daughter of the testator, and at the time of the sale the wife of one of the executors named in the will) for $11,800, she being the highest bidder therefor. She was, at the time, possessed in her own right of a personal estate more than sufficient to pay the bid which she made. Subsequent to the sale, at her request, the premises were conveyed by the executors to one Walter F. Parker, who, by deed bearing date the same day of the conveyance to him, conveyed the same to Dorcas M. Crampton, she having paid to the said executors the amount of her bid. She immediately went into and remained in possession of the premises until her death, which occurred on the 6th day of May, 1882. Mrs. Crampton left a will, which was admitted to probate as a will valid to pass both real and personal estate, and letters testamentary thereon were issued to her husband, Henry E. Crampton. By her will she devised her residuary estate, which included the premises in question, to her husband during his natural life, and directed that upon his death the same should be sold and converted into money, and the proceeds divided among her children; she gave her executors power to sell all of her real estate; she appointed

her husband sole executor during his life, and after his death appointed Charles H. Miller and Frederic G. Smedley as such executors. The husband, Henry E. Crampton, died on the 28th of May, 1899, and thereupon letters testamentary were issued to Charles H. Miller and Frederic G. Smedley, who are the plaintiffs in this action.

On the 26th of February, 1900, the plaintiffs, as such executors, entered into a contract of sale with the defendant of the premises in question, No. 544 Second avenue, for the sum of $12,000,—$500 of which was paid at the execution of the contract, and the balance agreed to be paid on delivery of the deed, at a time and place stated. According to the statement of facts contained in the submission, the executors of Jacob Miller, in September, 1875, filed an account with the surrogate of the county of New York, which contained, among other things, a statement of the money received "from sale of premises No. 544 Second avenue to Dorcas M. Crampton, at public sale, $11,800." All of the then surviving children of Jacob Miller were duly cited to attend such accounting, as well as the children of his deceased son, Jacob H. Miller. The accounts as filed were settled, passed upon, and approved by the surrogate.

At the time and place specified in the contract between the plain-tiffs and the defendant for the delivery of the deed, the plaintiffs tendered to the defendant a deed sufficient in form, but which the defendant refused to accept, upon the ground that the sale to Dorcas M. Crampton was voidable, if not void, as to the children of Jane A. Kenyon; that these children, by the terms of the will of Jacob Miller, were not entitled to her share of the estate until her death and the death of her husband; that no lapse of time cuts them off, as they were not entitled to share until their mother and father died, and for that reason the statute of limitations would not run against them, in any event, before they reached the age of 21 years; that the children of Jane A. Kenyon were not made parties to the accounting of September, 1875, and therefore were not bound by it; and that they were not bound by subsequent accountings, because no specific mention was made of the sale. Upon the foregoing facts, which were agreed upon and submitted pursuant to sections 1279 and 1281 of the Code of Civil Procedure, the plaintiffs ask that a judgment be directed in their favor compelling the defendant to accept the title tendered and pay the balance of the contract price, and the defendant asks that judgment be given in his favor cancel-ing the contract, and directing the plaintiffs to repay him the $500 paid on the execution of the contract, and in addition thereto $200 expenses conceded to have been incurred by him in examination of the title.

We are of the opinion that the plaintiffs are entitled to a judg-ment. The sole objection to the title tendered is based upon the relationship existing between Dorcas M. Crampton, the purchaser, and Henry E. Crampton, one of the executors of the will of Jacob Miller,—that of husband and wife. Before the adoption of the mar-ried woman's act this sale might have been insufficient to pass a marketable title, but after the passage of that act we do not think

it can be seriously questioned, under the facts here presented, but
that a good title was acquired.

The case of Potter v. Sachs, 45 App. Div. 454, 61 N. Y. Supp. 426,
is directly in point, and what was there said is quite applicable to
the facts set out in this submission. The presiding justice of this
court, delivering the opinion, said:

"There seems to be no question that prior to the deprivation of a husband
of all right and interest in his wife's real estate the objection in question
would have been considered to be of such character, if known to the pur-
chaser, to render the title unmarketable. The reason of this rule undoubtedly
was that the husband, during the lifetime of the wife, could reduce to his own
possession the personal property of his wife, and was entitled to the possession
of her real estate, and the rents, issues, and profits thereof, and upon her
death, if they had had any living children, to such possession, and to such
rents, issues, and profits, during his life, and he would, therefore, to a certain
extent, be the actual purchaser; she having, without his consent, no means
whatever which she could devote to such purpose. But it is difficult to see
how, under the present condition of the law, any such rule can be in vogue.
The wife has the absolute control of her personal and real estate. She may
dispose of it as she pleases, even contrary to the will of her husband. If she
desires to purchase real estate, her husband has no power to prevent it, as
he has no control, either of her actions or of her estate. Under these circum-
stances, the reason of the rule which previously existed has entirely disap-
peared. There is no relation existing between the husband and wife which
prevents the wife from doing that which she pleases with her own. A woman
is placed under no disability by reason of coverture. She is now the abso-
lute mistress of her own property. She may invest it as she pleases. She
may sell it as she pleases, and unless it is shown that some wrong has been
done by her conniving with her husband, which has come, or ought to have
come, to the knowledge of the purchaser, it seems to us that he gets a perfect
title."

Here the property was advertised to be sold at public auction.
The sale was thoroughly advertised. It was largely attended. Sev-
eral hundred people were present. There were many bidders. The
bidding was spirited. Mrs. Crampton made the highest bid for the
property in question, and the auctioneer could do no less than strike
down the property to her. Had a less bid been accepted, the sale
could unquestionably have been set aside. She had means of her
own with which to pay the bid made by her. She did pay the
amount of the bid out of her own money to the executors of Jacob
Miller, and they accounted for it as such, as a part of his estate.
Under such circumstances, we do not think it can be seriously ques-
tion but what a good title was obtained. If there were a single fact
which cast the slightest suspicion upon the bona fides of the sale, or
tended in any degree to show that she acted in collusion with her
husband, or that the property was not fairly sold, then another ques-
tion would be presented. But nothing of that kind appears in the
submission. The whole transaction indicates that the parties acted
in entire good faith, and it is not even intimated that the full value
of the property was not realized, and it must be held that the title
acquired is a good one. It would be a harsh and unjust rule, after
this woman, at a public auction, had made the highest bid, and the
property had been struck down to her, and she had paid her money
to the executors of the estate of Jacob Miller, and that estate had
had the benefit of it, to permit her title to fail when she did what

her husband could not prevent her doing, and what the statute gave her a legal right to do, viz. purchase real estate and take the title in her own name.  The case of Taylor v. Klein, 47 App. Div. 343, 62 N. Y. Supp. 4, is clearly distinguishable from the facts here presented.  There the committee of a lunatic who owned an undivided interest in real estate, without authority from the court, purchased at a partition sale the premises in the name of his wife, and the court refused to permit such sale to stand.  Here the wife personally made the purchase with her own money, and without even a suggestion, so far as appears, by the husband.

We are therefore of the opinion that the title is good, and judgment is given for the plaintiffs, directing the defendant to specifically perform the agreement according to the terms thereof by accepting the deed tendered to him and paying the balance of the purchase money, together with interest thereon, with costs.  All concur.

