Virginia J. Westervelt and Others, Plaintiffs, *v.* Carrie B. Hausner and Another, Defendants.

Supreme Court, Tompkins County, November 10, 1934.

*Newman & Newman,* for the plaintiffs.

*Cobb, Cobb & Simpson,* for the defendants.

Joseph D. Senn, Official Referee. The litigation herein concerns a dwelling house and lot on Hudson street, in the city of Ithaca, N. Y. It is now occupied by the defendant Carrie B. Hausner, under a claim of title based on a tax sale.

Aside from the deeds, the validity of which they assail, the plaintiffs are the owners, as tenants in common, of the real property mentioned.

Carrie B. Hausner is the widow and was the second wife of Willis Hausner, now deceased, to whom the house and lot was devised, during the term of his natural life, by the will of Emily A. Hausner, his mother. It provided that he was to pay a small mortgage on the property and that if his wife, Ella Hausner, survived him, she was to have the property during her widowhood; thereafter it was devised to Winnie L. Hausner, granddaughter of testatrix.

The four plaintiffs herein, two of whom are minors, are the surviving children of Winnie L. Hausner, who died September 11, 1925, and plaintiff's title or claim to the property in question is under her will.

Emily A. Hausner, testatrix, died September 4, 1910, seized of said real estate, subject to said mortgage, and leaving the will mentioned, which was probated and is in force.

Willis Hausner, the son, occupied the premises from the time of the death of his mother until his own decease on August 3, 1933. He never paid any part of the principal of the mortgage. His wife Ella did not survive him. After her decease and prior to the year 1931, he married Carrie B. Hausner, who lived with him on the said premises until his decease and has lived there ever since.

In the year 1931 the taxes on the premises in question were not paid. On November 25, 1931, the premises were sold for non-payment of taxes and purchased by Walter D. Helm, a son of the defendant and stepson of Willis Hausner. Said taxes were assessed as against Willis Hausner and no one else.

On November 26, 1932, the premises not having been redeemed, the city chamberlain made and delivered a deed of the same to said Walter D. Helm, which deed was recorded on December 10, 1932.

On December 22, 1932, Walter D. Helm conveyed the premises to his mother, Carrie B. Hausner, by quitclaim deed and without any consideration given or paid. This deed has been recorded.

The mortgage on which $250 of principal is unpaid, has been assigned to and is now held by Lydia Helm, wife of Walter D. Helm.

No notice, as required by section 130 of the Tax Law, was published or assumed to be published.

No notice pursuant to section 134 of the Tax Law or in attempted compliance with the same was served on the occupant or occupants of the premises or on any one, and consequently no proof of the service of such notice was offered at or recorded in the Tompkins county clerk's office. It seems clear to me that plaintiffs have a right to redeem said premises at any time prior to November 25, 1934, by following the procedure provided in section 137 of the Tax Law. (*Mabie* v. *Fuller*, 255 N. Y. 194, 201.)

A more serious question is raised by the claim of the plaintiffs that the neglect of the taxes by the life tenant, the purchase at the tax sale by his stepson, and the conveyance back to his mother without consideration, and all the acts and neglects enumerated constituted a constructive fraud against the plaintiffs, especially the minors, and is ground for setting aside the tax deed and the deed to the defendant under which she now assumes to hold the premises in question.

All the transactions in question took place during the lifetime of Willis Hausner, the life tenant, and in the very nature of things must have been known to him. The remaindermen had no knowledge of the same, actual or constructive. Indeed, they had a right to expect and assume that the mortgage and taxes would be paid by Willis Hausner according to the conditions of the will which created his life tenancy. As between him and the remaindermen it was his duty to pay the taxes. (*Wilcox* v. *Quinby*, 73 Hun, 524; *Clarke* v. *Clarke*, 145 N. Y. 476, 481.)

" With the duty to pay the taxes resting upon him, it follows that the life tenant cannot take advantage of his own wrong and cut out or destroy the estate of the remainderman in the property by permitting it to be sold for taxes and taking to himself the title thus accruing, and accordingly a purchase by a life tenant of a tax title, either directly or indirectly, amounts merely to a redemption from the tax sale, and restores not only his own rights but those of the remainderman. * * * So also it has been ruled that the wife of the life tenant occupying the premises with her husband cannot obtain a valid tax title to the property as against her husband or against those to whom he owes the duty to keep down the taxes."

The last above quotation is from 17 Ruling Case Law, 637, 638. Although the cases there cited were decided in jurisdictions other than the State of New York, the doctrine seems to be sound in principle.

*Seymour* v. *Seymour* (120 Misc. 525, 527) was a case where a life tenant of real estate leased it to his son, Clinton Seymour, upon condition that he would pay the taxes and keep the buildings in repair. Clinton and his wife, Ethel Seymour, moved on the property and at the time of the action still resided there. The son failed to pay the taxes and the property was sold for non-payment of taxes and bid in by Samuel J. Webb. Before the time to redeem had expired, the wife, Ethel, bought the certificate of sale of Webb and thereafter received the county treasurer's deed under which she claimed the title to the premises.

It was held that equity would prevent the tenant from taking advantage of his own default to acquire the title of the life tenant and the other remaindermen, with whom he (Clinton Seymour) was a tenant in common. In that case, as in this, the money to redeem the taxes was not paid and the deed was not taken by the one who was obligated to pay the taxes, but by his wife.

In a very able opinion by Mr. Justice Edgcomb he held that the disability of the husband to purchase the tax sale certificate applied to the wife as well. That the disability did not spring from the common-law incidents of coverture, but from the closeness of the

wife's relationship to her husband. (Citing *Davoue* v. *Fanning*, 2 Johns. Ch. 252; *Taylor* v. *Klein*, 47 App. Div. 343; affd., 170 N. Y. 571, and other cases.)

Among other things the court said: "'It is true that in the above cases the act which was subsequently condemned was done by the trustee himself and not by his wife, or clerk, while in the case at bar, * * * the wife rather than the husband was the actor. But these cases point out the danger which lurks in allowing a wife to do what a husband could not. * * * I think that the spirit of the rule which forbids Clinton Seymour from taking a tax deed to these premises for his own exclusive benefit embraces his wife, and stops her from doing that which he could not lawfully do. The close relationship which exists between husband and wife * * * is sufficient to cast a suspicion upon a sale of this kind. If it is permitted it would open an avenue to fraud and abuse, and would make it easy to accomplish, in an indirect way, that which the law says cannot and should not be done."

All of which and more could be said of the case now before me. As in that case, there was no affirmative proof of fraud, but the acts of the defendant constituted a constructive fraud upon all interested in the property, even if the defendant did not intend them as such.

I do not find that there was ever any appeal in the *Seymour* case. It has been cited in the appellate courts. (See *Harris* v. *Moskowitz*, 236 App. Div. 196, 197.)

In some aspects the instant case is even stronger for the plaintiffs than the *Seymour* case. There the tax sale certificate was purchased for money and the transaction was handled through one not shown to be related. Here it was done through defendant's own son and no money was directly paid by her.

It is true, as pointed out by defendants' attorneys, that the cases of *Harris* v. *Moskowitz* (236 App. Div. 196), and *Carpenter* v. *Carpenter* (131 N. Y. 101) differ from the instant case in such essentials as to have no direct bearing here.

On the other hand, the *Seymour* case is so directly in point and the reasoning seems to me to be so sound that I am willing to adopt it as my own. I cannot escape the conviction that in this case all the transactions now involved were pursuant to a deliberate and rather thinly veiled scheme to defeat the remaindermen and to profit the defendant Carrie B. Hausner at their expense.

I hold that the plaintiffs are entitled to judgment setting aside the two deeds in question as fraudulent and void and that no reimbursement or tender back of taxes and expenses of tax sale is necessary, unless plaintiffs shall elect to make such tender. I have signed findings to that effect.