VIRGINIA SCOTT BONHAM, Suing on Behalf of Herself and All Others Interested in the Estate of LUCY KERR SCOTT, Deceased, Appellant, *v.* COSMO COE and Others, Defendants, Impleaded with JACOB KATZ and Others, Respondents.

Fourth Department, January 13, 1937.

430

*Carroll M. Roberts*, for the appellant.

*Herbert R. Reif*, for the respondents National Bank of Rochester and Union Trust Company of Rochester.

*Frederick Wiedman*, for the respondents Jacob and Jennie Katz, Morris and Anna Zamos and Zeekay Apartment Corporation.

*James Mann*, for the respondent The Albany Savings Bank.

EDGCOMB, J. On April 10, 1928, Edwin A, Scott, executor of the last will and testament of his wife, Lucy Kerr Scott, deceased,

exchanged a farm in Cattaraugus county, belonging to the estate, for an apartment house in the city of Rochester, which was burdened with mortgages aggregating $35,850, held by the Albany Savings Bank and the Union Trust Company of Rochester, the successor of the National Bank of Rochester. From time to time thereafter the executor paid to the respective banks moneys belonging to the estate to apply upon the interest and principal of these mortgages.

Claiming that the interchange of properties was illegal and void, and that the payments made upon the mortgages were a misappropriation of trust funds, plaintiff, the only child of the decedent and the residuary legatee under her will, brought this representative action to set aside the transfers, and to recover the moneys thus expended.

While the plaintiff could compel the executor to account for the full value of decedent's property, she was not confined to such remedy. Ordinarily she would have no independent cause of action, either in her own right or that of the estate, to recover moneys or property wrongfully disposed of by the executor, but if the executor, after due demand, refused to bring such an action, plaintiff could properly do so. (*Agne* v. *Schwab*, 123 App. Div. 746; *McQuaide* v. *Perot*, 223 N. Y. 75, 79, 80; *Harvey* v. *McDonnell*, 113 id. 526.)

One who receives property, knowing it to be the subject of a trust, and to have been transferred in violation of the trustee's duty or power, takes it subject to the right of the trustee, and also of the *cestui que trust*, to reclaim possession thereof, or to recover for its conversion. (*Zimmerman* v. *Kinkle*, 108 N. Y. 282, 287; *Wetmore* v. *Porter*, 92 id. 76, 82; *New York City Employees' Retirement System* v. *Eliot*, 267 id. 193, 202.)

By her will decedent gave her executor power to sell any real estate of which she died seized. This power, however, was not broad enough to authorize an exchange of such property for other real estate. (*Trimboli* v. *Kinkel*, 226 N. Y. 147, 149; *Turco* v. *Trimboli*, 152 App. Div. 431, 432; *Woerz* v. *Rademacher*, 120 N. Y. 62, 68; *Moran* v. *James*, 21 App. Div. 183, 185.)

No better reason for the rule limiting the effect of a power of sale to a transfer for cash, or its equivalent, could be found than in the present case. Instead of a sale upon a conservative basis, we have a highly speculative transaction. The upkeep of the apartment, to say nothing of any payment of principal or interest on the mortgages, aggregated $20,296.02 from April 10, 1928, until May or June, 1933, when it was taken over by a receiver appointed in a mortgage foreclosure action, or $1,944.52 more than

the gross income received from the property. The law will not countenance so hazardous a transaction, unless it is expressly authorized by the will itself. That was not done here.

The method employed by the executor to bring about the exchange of these properties was involved and complicated. On March 23, 1928, the executor fell into the hands of a real estate agent by the name of Dege. The defendants Jacob Katz and Morris Zamos owned an apartment house in the city of Rochester which they had listed for sale with the defendants Ireland and Barron. The agents got together in an endeavor to make a sale of both pieces of property. Mr. Scott, individually, and not as executor of his wife's estate, signed an offer to trade the farm for the Rochester property. Three days later this offer was accepted, not by Katz and Zamos, the owners of the property, but by Cosmo Coe, a dummy, who was brought into the picture by Barron, and who signed the various instruments required to complete the transfer without consideration, and merely as a favor to Barron.

On April 10, 1928, the parties got together and closed their deal. Mr. Scott, as executor of his wife's estate, executed a deed of the farm to Cosmo Coe, and Coe gave back a mortgage for $5,000. This mortgage constituted no part of the purchase price of the property, but was treated as a loan. Scott drew his personal check for $3,225.10 to the order of Coe's attorney, and assigned to Coe a mortgage for $1,500, which was held by him as guardian for the plaintiff on property situated in Genesee county. The balance of the loan was taken care of by certain adjustments for expenses. Coe never had possession of this check; the attorney indorsed it to the order of Katz and Zamos, and delivered it to them. Katz and Zamos then deeded the apartment house to Coe, and Coe gave back to his grantors a purchase-money mortgage for $21,000. Coe then deeded the apartment house to Mr. Scott individually, and Scott and his second wife, Lillian L. Scott, immediately turned around and transferred the property to himself as executor of the last will of Laura Kerr Scott. In this latter deed the grantee assumed and agreed to pay the two mortgages held by the Albany Savings Bank, aggregating $14,850.

Katz and Zamos were indebted to the National Bank of Rochester upon two notes in the aggregate sum of $18,090, and they assigned the $21,000 mortgage which had just been given to them to the bank as collateral security for their indebtedness.

On September 28, 1928, the National Bank of Rochester was merged with the Union Trust Company of Rochester, and the interest of the former institution in the $21,000 mortgage has been assigned to the Union Trust Company.

The court has found that the executor has paid $11,122 from the funds of the estate to apply upon the mortgage assigned to the Union Trust Company, and $5,752.65 to apply upon the principal and interest of the Albany Savings Bank mortgages.

The court has also found, as well it might, that the devious and roundabout way in which this transfer of properties was accomplished, and the giving of these various deeds, was all a part of one transaction, and that the executor had no power or authority to make any contract for the exchange of property belonging to the estate for other real estate, and that the deeds of the apartment house from Coe and wife to Scott, and from Scott individually to himself as executor, and the deed of the Cattaraugus farm from Scott, as executor, to Coe, are null and void, and without legal effect, and should be canceled and discharged of record. For some unexplained reason the judgment does not follow the findings in this regard; it contains no such provision.

The illegality of the transfer, however, does not, as matter of law, give plaintiff a right to recover from Katz and Zamos the $3,225.10 received by them as a part of the consideration for the apartment house, or to recall the money paid to the banks on their mortgages. That can only be done if the recipients took these payments with notice or knowledge that they were trust funds, and that such funds had been improperly diverted. Mere knowledge of the source of the money is not sufficient — there must also be knowledge of the violation of a trust duty. Actual knowledge is not necessary. If the recipients were put on notice, either actual or constructive, that is sufficient. If the defendants, or any of them, received these payments with notice of their nature, and of their diversion, the recipients became thereby trustees by operation of law, and are accountable as such. (*Tucker* v. *Weeks*, 177 App. Div. 158.)

"If the trustee in breach of trust transfers trust property to, * * * a person who takes for value and without notice of the breach of trust, and who is not knowingly taking part in an illegal transaction, the latter holds the interest so transferred or created free of the trust, and is under no liability to the beneficiary." (Restatement of the Law of Trusts, § 284.)

Laying aside for the moment the question of actual notice, it might be well to determine just what constitutes constructive notice. That term is defined by the Court of Appeals in *Acer* v. *Westcott* (46 N. Y. 384, at p. 388), as follows: "Constructive notice may be said to be a knowledge by the purchaser of some facts which should put him upon inquiry, and require him to examine

other matters that would generally unfold the true title. If he omit to make the examination in a proper case, he is conclusively charged with negligence, and with notice of the defect in the title. (1 Story's Eq. 399, and cases cited.) But if he exercised due diligence and fail to discover the defect, the presumption of negligence is rebutted, and he is regarded as a *bona fide* purchaser."

Knowledge of a trustee's violation of trust conditions and requirements will be chargeable to one dealing with the trustee, if the facts are such as, in reason, should put a reasonably intelligent and diligent person on inquiry, and require him to make an investigation, the result of which would reveal the true situation. (See comments under section 297 of the Restatement Law of Trusts.) Under such circumstances the person dealing with the trustee will be regarded as having constructive notice of the terms of the trust from which the trustee derives his power to act. The question is not whether such person had the means of obtaining, or whether he might by prudent caution have obtained the requisite knowledge, but whether, in not obtaining it, he was guilty of gross or culpable negligence. (*First National Bank* v. *National Broadway Bank*, 156 N. Y. 459, 470.)

With these rules in mind it becomes necessary to examine the evidence relating to any notice which these defendants had, either actual or constructive, of the nature of the funds which they received, and of their diversion from proper channels.

First, as to the defendants National Bank of Rochester and Union Trust Company: The trial court has held that these institutions were not negligent; that at the time of the receipt of these payments they had no notice, actual or constructive, that the payments were unlawful or unauthorized. The evidence warrants such conclusion, and we would not be justified in disturbing the finding.

Some of the checks received by the bank to apply on its mortgage were signed by Mr. Scott, as executor. This fact gave notice of the character of the fund on which they were drawn, and put the bank on inquiry as to the authority of the trustee to dispose of the money in the manner proposed. (*Fellows* v. *Longyor*, 91 N. Y. 324; *Gerard* v. *McCormick*, 130 id. 261.) But there is no evidence that the bank had actual notice that the money was diverted, or used for an improper purpose; nor can it be said that it was negligent in failing to discover that fact. At least, the trier of the fact was justified in finding, as did the Special Term here, that the bank was acting in good faith. The doctrine of constructive notice will not be unduly extended. (*Acer* v. *Westcott*, 46 N. Y. 384.) It was not until Katz and Zamos assigned the

$21,000 mortgage to the National Bank as collateral security to their indebtedness that the bank came into the picture. Neither that institution, nor its successor, was a party to the exchange of properties. A presumption always exists that a trustee will faithfully administer his trust, and will not misappropriate the funds committed to his care. When the bank received these checks it had a right to assume that the executor was applying the funds to a proper use. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106, 111; *Clarke* v. *Public National Bank & Trust Co.*, 259 id. 285, 289.)

What was there to cause the bank to think otherwise, or to indicate that there was anything wrong about the transaction? The bank had a right, at its own risk of course, to loan money on the strength of this mortgage without examining the title to the property. The bank had such constructive notice as the statute and rules of law provide, but that does not go so far as to charge it with notice of everything which might have been learned from an examination of the records connected with the title. (*Potter* v. *Sachs*, 45 App. Div. 454; *Albany Exchange Savings Bank* v. *Brass*, 59 id. 370; affd., 171 N. Y. 693.)

An examination of the abstract of title to the apartment house would have disclosed the fact that the Scott estate owned the property, and there would have been no occasion to go behind the record. Is it not perfectly natural and proper for the owner to take care of an incumbrance on his own property? Is there anything which would excite one's suspicion in such a transaction? It is the duty of an executor to preserve the estate intrusted to his charge.

Furthermore, these checks were drawn on the Springville bank, and were sent there for collection, and were paid. This payment was an acknowledgment by the Springville bank that the check was properly and lawfully drawn. (*Havana Central R. R. Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422, 429.)

In the absence of knowledge to the contrary, or of suspicious circumstances which would put them on their guard, the National Bank and its successor had a right to rely upon the fact that the Springville bank would use proper care to see that trust funds in its keeping would not be misapplied. (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394, 405.)

What has been said concerning the Rochester banks can be said with equal force concerning the payments made to the Albany Savings Bank. If anything, the case is stronger for the savings bank. Its mortgages were valid liens, and had been on the property for sometime. Why should not the funds of the estate be used to pay the interest on these mortgages, and to reduce this indebted-

ness? The court finds that the Albany bank had no notice, constructive or actual, that these payments were unlawful or unauthorized. That finding is warranted, and should not be disturbed.

As to Katz and Zamos a different situation exists. The court has found that the $3,225.10 paid upon the purchase price of the apartment house came from funds of the Scott estate, and that Katz and Zamos not only had notice of that fact, but knew or should have known that the executor had no authority to exchange the farm for other property.

Katz was present at the office of Coe's attorney when the trade was made. He knew the devious method pursued. The fact that there was a marked departure from the natural and direct way in which such business is usually transacted, and that a person, who had no connection with the properties, and no financial interest in the transaction, was brought in and made a link in the chain of title, could scarcely fail to give him notice that something out of the ordinary was taking place. Katz had previously been told that the executor of an estate desired to trade a farm for this apartment house, and he cannot now be heard to say that the disguise which was adopted lulled him into thinking that he was making a *bona fide* sale to Coe, and that the Scott estate was in no way involved. But if, by any stretch of the imagination, it could be said that Katz and Zamos were personally ignorant of the real transaction which was taking place, Ireland and Barron, their agents, were not. They conceived the scheme which was adopted to bring about the exchange of these properties. As a general rule a principal is bound by notice to or knowledge of his agent concerning all matters within the scope of the agency, even if the information is never actually communicated to the principal. (*Cox* v. *Pearce*, 112 N. Y. 637, 640, 641; *Hyatt* v. *Clark*, 118 id. 563, 569; *Hurley* v. *John Hancock Mutual Life Ins. Co.*, 247 App. Div. 547, 550; *Adams* v. *Mills*, 60 N. Y. 533, 539.)

At the outset of the negotiations Ireland was told that Scott was executor of an estate, and had a farm which he wished to exchange for Rochester property. Scott offered to trade one property for the other. Ireland conveyed that information to Katz. When Scott signed the offer to exchange, he told Ireland that he was dealing for an estate. Ireland was shown the search on the farm, which contained an extract from the will relating to the executor's authority. There can be no doubt of Ireland's knowledge.

The deed to the farm was signed by Scott, as executor, and was acknowledged before Myer Miller, Katz and Zamos' attorney. Miller was present when these various instruments were signed

and delivered. He was told by Scott that all the money was furnished by Mrs. Scott's estate, and that the deed should go to him as executor. Katz and Zamos are charged with that knowledge.

The respondents, however, call attention to subsequent findings of the court, made in response to requests by them, to the effect that neither Katz nor Zamos had notice, actual or constructive, that any payments were made from funds of the Scott estate. The two findings cannot be reconciled. Under such circumstances it becomes the duty of the court to accept the one most favorable to the appellant, as she is entitled to rely upon such finding in aid of her exception. (*Elterman* v. *Hyman*, 192 N. Y. 113, 117; *Nickell* v. *Tracy*, 184 id. 386, 390; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 id. 84, 98; *Israel* v. *Manhattan R. Co.*, 158 id. 624, 631.)

If Katz and Zamos are chargeable with knowledge that the $3,225.10 check was drawn on trust funds, they must have known that the money was diverted from its proper channel, or at least they were charged with the burden of inquiry. They accepted and kept this money, and participated in its conversion, knowing full well, or at least being charged with such knowledge, that the executor had no right to use the money for this purpose. They acquired an advantage and material benefit directly because of the diversion of these funds. Under such circumstances they became privy to the tort. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.)

The liability of Katz and Zamos, however, is not confined to the $3,225.10 which they received as a part of the purchase price of their property. The executor has paid to the Union Trust Company and to its predecessor $11,122, money belonging to the estate, to apply upon the Katz and Zamos mortgage, and their indebtedness to the bank has been reduced in that amount. They have been benefited to that extent by such payments. When they assigned their mortgage to the bank, they knew that the property which it covered was owned by the Scott estate, and that the transaction which resulted in the estate acquiring title was illegal and unauthorized; they had every reason to believe that payments would be made by the estate to apply on the mortgage, or else the mortgage would be foreclosed, and later they actually knew that such payments were made from time to time. Under such circumstances equity will not permit them to unjustly enrich themselves at the expense of this estate. (*Gray* v. *Huffaker*, 176 Cal. 516; 169 P. 1038.) Had the money been paid directly to them there can be no doubt that they would have been liable for the same.

There can be no difference in principle when it was paid to the bank for their benefit. Equity will compel them to pay it back to the estate.

He who seeks equity must do equity, and the estate should account for any income received from the apartment house. If there was any profit, it should be credited on the payments made on this mortgage. The court has found that there was no profit; that the upkeep of the property exceeded the income, and that the operating loss during the period that the estate collected the rents, not including any payment of principal or interest on the mortgages, was $1,944.52. There is, therefore, no rebate. The estate should, however, be required to release to Katz and Zamos any interest which it has in the apartment house.

The record will not permit a similar disposition to be made of the $5,752.65 paid to the Albany Savings Bank. In making these payments to the bank, it does not appear that the executor was paying any personal obligation of Katz and Zamos. It does not appear that they gave the mortgage, or assumed the debt. Nor can the money be recovered upon the theory that it was paid to discharge an incumbrance on their property, and that they are benefited thereby. They do not own the apartment house; they deeded it to Coe. and that deed has not been held illegal or void.

Plaintiff is not without a remedy, however. Trust funds have been improperly diverted to pay a portion of this mortgage, and in all fairness and justice the property ought not to be permitted to benefit by such unauthorized payments. He who in good conscience ought to pay a debt should be compelled to ultimately discharge the obligation. This is but natural justice and fair dealing. Subrogation is a device adopted or invented by equity to meet just such a situation. It is a highly favored remedy, and while it is not a matter of strict right, the courts are inclined to extend rather than restrict its principle.

The assumption of these mortgages by the estate was unauthorized and void, as has been found by the trial court. The executor was not primarily liable to make these payments. No injustice will be done by permitting the estate to be subrogated to the rights of the bank to the extent of the payments which have been made to it on its debt. Such right, however, should be made subsequent to the lien of the savings bank for the unpaid portion of its mortgages. There are no existing or countervailing equities opposing such relief, and the result will not change the priority of any incumbrance upon the property, or interfere with the rights of a *bona fide* purchaser.

Under these circumstances the doctrine of subrogation appeals strongly to the conscience of the court. The estate should be allowed to step into the shoes of the creditor to the extent of these payments, and be entitled to use all the means which are available to the mortgagee to enforce payment of its obligation. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137, 142; *Title Guarantee & Trust Co.* v. *Haven*, 214 id. 468, 487, 488; *Allen* v. *Russell*, 78 Ky. 105; *Patten* v. *Bond*, 60 L. T. [N. S.] 583.)

This same principle may properly be applied to the payments made from the estate to apply on the Katz and Zamos mortgage, notwithstanding the fact that they are personally liable for this amount. The estate should be subrogated to the rights of the Union Trust Company in so far as the payments which it has made on this mortgage are concerned, and this lien should stand as collateral security to the judgment hereby granted against Katz and Zamos for that amount.

The $1,500 mortgage assigned by Scott to Coe as a part payment of the $5,000 loan was assigned to the real estate agents, and divided between them. It cannot be recovered in this action. That mortgage was not the property of the Scott estate. It belonged to the plaintiff personally, and was held by Scott, as her guardian. This is a representative action, and plaintiff can recover in such an action only such property as belongs to the estate.

It is true that the action was not brought or tried on the theory that Katz and Zamos should be held personally liable for the money paid to the trust company to reduce their indebtedness, or that the estate should be subrogated to the rights of the banks as to any payments made upon their mortgages. Plaintiff sought to get back the money paid from the funds of the estate from those to whom it was paid.

But this is an action in equity, and equity, once having acquired jurisdiction of a case, will administer all the relief which the facts and the nature of the controversy demand. The fact that the specific relief demanded is inadequate to the relief about to be granted will not prevent the court from granting a proper judgment, where, as here, the complaint demands " such other and further relief as shall be just and proper." A prayer for general relief is as broad as the equitable powers of the court, and under it the court may properly shape its decree in accordance with the equities of the case. (*Russell Hardware & Implement Mfg. Co.* v. *Utica Drop Forge & Tool Co.*, 195 N. Y. 54; *Skillin* v. *Maibrunn*, 75 App. Div. 588; affd., 176 N. Y. 588; *Rogers* v. *New York & Texas Land Co.*, 134 id. 197, 219.)

It follows that the portion of the judgment which dismisses the complaint with costs on the merits as to the defendants Jacob Katz, Jennie Katz, Morris Zamos and Anna Zamos, should be reversed upon the law and the facts, with costs against Jacob Katz and Morris Zamos, and that judgment should be directed against the defendants Jacob Katz and Morris Zamos for $15,771.10, with interest on $3,225.10 from April 10, 1928, and with interest on the various amounts going to make up the aggregate of $12,546 from the date of payment of the various installments, as found in findings Nos. 54 and 60, together with costs; and that said judgment should be amended by providing (1) that the contract for the exchange of properties, consisting of an offer, made by Edwin A. Scott and an acceptance by Cosmo Coe, under date of March 26, 1928, be adjudged null and void; (2) that the deed from Coe and wife to Scott, recorded in Monroe county clerk's office in liber 1450 of Deeds at page 480, and the deed by Scott and wife to Edwin A. Scott, as executor, recorded in Monroe county clerk's office in liber 1450 of Deeds at page 477, and the deed from Scott, as executor, to Cosmo Coe and Nina Coe, recorded in Cattaraugus county clerk's office in liber 311 of Deeds at page 203, are, and each of them is, null and void, and without legal effect, and are hereby canceled and discharged of record; (3) that the estate of Lucy Kerr Scott be subrogated to the rights of the Albany Savings Bank, to the extent that may be necessary to reimburse the estate for the amounts paid to said bank by said estate to apply upon the mortgages held by said bank upon the Rochester apartment house, amounting in the aggregate to $5,752.65, with interest on said payments from the date the same were made, as found in finding No. 72, said lien and rights of said estate, however, to be subsequent and subordinate to the lien of said Albany Savings Bank for the total amount unpaid upon its said mortgages; (4) that the Scott estate be subrogated to the rights of the Union Trust Company of Rochester to the extent that may be necessary to reimburse it for the amount paid by it to said trust company, or its predecessor, the National Bank of Rochester, to apply upon the mortgage given to Katz and Zamos, and held by said trust company as collateral for the indebtedness of said Katz and Zamos, said lien and rights of said estate to be collateral to the judgment hereby granted against Katz and Zamos to the amount of $12,546 and interest, and to be canceled and discharged when said indebtedness is paid, said lien also to be subsequent and subordinate to the mortgage of the Albany Savings Bank, and the unpaid portion of the Katz and Zamos mortgage; (5) that the executor of the Scott estate release to Katz and Zamos any and all right, title and interest

which it has in the Rochester apartment house; (6) that the estate of Lucy Kerr Scott be released from all personal obligation by reason of the assumption of the Albany Savings Bank mortgages in the deed to Scott as executor; that, except as herein reversed, changed or modified, said judgment be affirmed, with a separate bill of costs to the Albany Savings Bank and to the Union Trust Company and National Bank of Rochester.

Certain findings of fact and conclusions of law disapproved and reversed, and new findings and conclusions made.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment in so far as it dismisses the complaint with costs on the merits as to the defendants Jacob Katz, Jennie Katz, Morris Zamos and Anna Zamos reversed upon the law and facts, with costs against defendants Jacob Katz and Morris Zamos, and judgment directed against defendants Jacob Katz and Morris Zamos for $15,771.10, with interest on $3,225.10 from April 10, 1928, and with interest on the various amounts going to make up the aggregate of $12,546 from the date of payment of the various installments, as found in findings Nos. 54 and 60, together with costs; and judgment otherwise modified on the law and facts by providing (1) that the contract for the exchange of properties, consisting of an offer, made by Edwin A. Scott and an acceptance by Cosmo Coe, under date of March 26, 1928, be adjudged null and void; (2) that the deed from Coe and wife to Scott, recorded in Monroe county clerk's office in liber 1450 of Deeds at page 480, and the deed by Scott and wife to Edwin A. Scott, as executor, recorded in Monroe county clerk's office in liber 1450 of Deeds at page 477, and the deed from Scott, as executor, to Cosmo Coe and Nina Coe, recorded in Cattaraugus county clerk's office in liber 311 of Deeds at page 203, be and each of them is adjudged null and void, and without legal effect, and are hereby canceled and discharged of record; (3) that the estate of Lucy Kerr Scott be subrogated to the rights of the Albany Savings Bank, to the extent that may be necessary to reimburse the estate for the amounts paid to said bank by said estate to apply upon the mortgages held by said bank upon the Rochester apartment house‘ amounting in the aggregate to $5,752.65, with interest on said payments from the date the same were made, as found in finding No. 72, said lien and rights of said estate, however, to be subsequent and subordinate to the lien of said Albany Savings Bank for the total amount unpaid upon its said mortgages; (4) that the Scott estate be subrogated to the rights of the Union Trust Company of Rochester to the extent that may be necessary to reimburse it for

the amount paid by it to said trust company, or its predecessor, the National Bank of Rochester, to apply upon the mortgage given to Katz and Zamos, and held by said trust company as collateral for the indebtedness of said Katz and Zamos, said liens and rights of said estate to be collateral to the judgment hereby granted against Katz and Zamos to the amount of $12,546 and interest, and to be canceled and discharged when said indebtedness is paid, said lien also to be subsequent and subordinate to the mortgage of the Albany Savings Bank, and the unpaid portion of the Katz and Zamos mortgage; (5) that the executor of the Scott estate release to Katz and Zamos any and all right, title and interest which it has in the Rochester apartment house; (6) that the estate of Lucy Kerr Scott be released from all personal obligation by reason of the assumption of the Albany Savings Bank mortgages in the deed to Scott as executor; and, except as so reversed and modified, judgment so far as appealed from affirmed, with separate bills of costs to the Albany Savings Bank and to the Union Trust Company and National Bank of Rochester appearing by separate attorneys. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.