CLARA B. STEPHENS, Plaintiff *v.* EDD EVANS et·al., Defendants.

Supreme Court, Trial Term, Steuben County, December 24, 1947.

*Nicholas J. Changose* and *Albert E. Hollis* for plaintiff.

*Simpson & ·Morton* for defendants.

WHEELER, J.   The plaintiff, in 1945 and prior thereto, was a member of the unincorporated religious association known as the Hornell Gospel Center.   Sometime in 1945 it came to the attention of this group that the owner of the building rented by them for their meeting-place desired to sell the premises. The owner's agent in Hornell offered the property to the group for the sum of $1,900.   It is not disputed that a committee representing the religious group, on October 20, 1945, paid the agent $235 as a down payment on the property, receiving a receipt therefor.   It is also undisputed that sometime in December, 1945, plaintiff obtained paper title to the property in ·question by

virtue of a deed to her from the owner, Mr. DeWitt. At the time delivery of the deed was made to plaintiff she paid the balance of $1,665 on the original purchase price of $1,900.

Upon these facts, together with proof of proper notice and demand, plaintiff bases her action for ejectment. Plaintiff contends that she has legal title or a right of possession which entitles her to the relief sought. Defendants counterclaim, seeking equitable relief.

It is apparent that the plaintiff, though she holds a deed in her name, executed by the former owner, has not paid the entire purchase price; nor does she so claim. This fact alone gives rise to considerable doubt as to the sufficiency of her legal title for the purpose of maintaining an action of ejectment against the defendants. This question, however, need not be decided, as there are other elements which are determinative of the plaintiff's title.

Equity regards that as done which ought to be done, and intervenes when a transaction is condemned by the wholesome moral sense of the community, or is repugnant to a sensible concept of right and justice. And where title to property has been obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, or when the property thus obtained is held in hostility to his beneficial rights of ownership, the court of equity intercedes to relieve the equitable owner.

This is accomplished by application of the constructive trust, which arises by operation of law, or, as stated in Corpus Juris (65 C. J., Trusts, § 215), " * * * more accurately, by construction of the court, regardless of, and ordinarily contrary to, any intention to create a trust ". The constructive trust is, in truth, a fiction of the equity courts, devised to the end that the equitable remedies available against a conventional fiduciary may be available under the same name and processes against one who through fraud or mistake or by any means *in invitum* acquires or holds property properly belonging to another. The doctrine has not often been more succinctly stated than by Justice CARDOZO in *Beatty* v. *Guggenheim Exploration Co.* (225 N. Y. 380, 386), where he writes: " A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." To the same effect, and particularly pointed in respect to this case, is the statement by Pomeroy in his treatise on Equity Jurisprudence (§ 1044, 5th ed.): " Certain species of the constructive

trusts arise from actual fraud; many others spring from the violation of some positive fiduciary obligation; in all the remaining instances there is, latent perhaps, but none the less real, the necessary element of that unconscientious conduct which equity calls constructive fraud.''

This court has not discovered in the reported cases any set of facts which would more warrant the imposition of the constructive trust than the facts of the case at hand. This plaintiff was a member of the religious group involved, and as such was possessed at the very least of the same knowledge regarding the proposed transaction as was any other member of the congregation. Further, however, she went with the designated committee to contact the seller's agent, and to him appeared and acted as though she were an appointed member of that committee. She knew the details of the arrangements between the seller and the church and knew that the vendor's agent, Mr. Copeland, had accepted a down payment on the property.

Then, two months later, the plaintiff paid the balance due on the said property, taking the title in her own name. This, incidentally, was in direct violation of an express mandate of the congregation of which Mrs. Stephens was then a member, that no individual should own the church property. At the time of the closing no one was present representing the church. It is inescapable that at this time the plaintiff intentionally created the reasonable impression that she was acting for the church for, though she did not affirmatively indicate her agency, she knew the background of the first meeting, knew of the discussion had with Mr. Copeland regarding the necessity of the conveyance being made to a legal person, yet did nothing to dispel that impression which could justifiably be held by any reasonable person.

It is of no consequence, though hardly commendable, that the plaintiff has not tendered the church the amount of the down payment made by the group with its own money; the plaintiff could not be allowed to retain the property even though she had paid the full purchase price.

Plaintiff argues that she should not only not be penalized but should not even be criticized, as she did not take advantage of the defendant church. At the most, it is said, she took advantage of a situation. This is a mere play on words and cannot be accorded the serious consideration which its proponents perhaps felt should be granted the argument. The '' situation '' would not have been created if it were not for the membership of the plaintiff in the congregation and her resultant information

regarding the proposed transaction. Plaintiff's relationship with the church of which she was a member was such that she should be considered, if not a positive fiduciary, in at least an implied confidential relationship. Her undisputed and admitted behavior is that unconscionable conduct which requires the court of equity to force upon her conscience the constructive trust.

The plaintiff's complaint is dismissed, with costs, and the defendants are granted judgment on their counterclaim. Plaintiff will execute to the Hornell Gospel Center a deed to the subject property with suitable covenants against grantor upon tender of the sum of $1,665, together with the amount of taxes, assessments and insurance paid by the plaintiff; provided, however, that the said tender be made within thirty days from service of a copy of the judgment herein upon the plaintiff's attorney. In the event of any dispute between the parties as to the amounts additional to the $1,665, balance of the original purchase price, either party may apply to the Special Term of the Supreme Court at the foot of the judgment herein for further directions. The parties may also make like applications for further directions regarding the enforcement of the judgment. if such instruction be necessary.

Appropriate findings may be submitted.