Marshall E. Livingston, J.
These actions seek to impress a constructive trust upon certain real property now owned by the defendant Wayneport Yacht Club, Inc., by Donald Soles, in behalf of himself and all members of the Fairport Yacht Club prior to its incorporation on January 5,1965, and Fairport Yacht Club, Inc., against Earl Stevenson, a former member of the yacht club, and Wayneport Yacht Club, Inc., to which club Mr. Stevenson now belongs.
On August 20, 1964, the unincorporated Fairport Yacht Club held a meeting, and the minutes reveal that approximately 30 members present voted nearly unanimously to ‘ ‘ purchase or lease a parcel of land along the canal for a future clubhouse ”. The Club Commodore then appointed a land and building committee, “ to find the needed land and cost for a proposed clubhouse ”.
George Ornt was appointed chairman of the committee. The defendant Stevenson, L. Hollis Bernard and the plaintiff Donald Soles were some of the members of this committee.
*403 During the balance of 1964 regular monthly meetings were held, the original minutes of which are in evidence. In September a ‘ ‘ motion was made and carried that the Land and Building Committee be given a free hand towards the leasing or purchase of the land ’ ’.
On October 15 Chairman Ornt reported at the monthly meeting “ on the parcel of land on the canal that is under consideration by the Club. This parcel is 1575 feet long and between 300 and 400 feet deep. He then showed the exact location on a New York State Barge Canal map and told of the excellent possibilities this land has for the Club’s needs ”.
At another meeting on October 27, slides were shown of the parcel along the canal which the committee had located. Plans were discussed concerning the raising of funds and incorporating the club. Mr. Stevenson also spoke of a clubhouse estimated to cost $15,000 to be ready for occupancy June 1, 1965.
On November 19, 1964 Messrs. Stevenson and Bernard reported on the proposed clubhouse, and plans were shown. At this meeting six members were unanimously elected as the first Board of Directors to serve upon incorporation. Messrs. Ornt, Stevenson and Bernard were named to serve on this board.
In the meantime Chaiman Ornt and Mr. Stevenson had conferred in Syracuse with the State Public Works District Engineer in charge of the canal lands and learned from him that a half acre of land contiguous on the east end of the property to be leased by the club was owned by Wayne County. Mr. Ornt testified, in substance, that Mr. Stevenson thought we should buy it before we found a hot dog stand erected on the land. Both agreed to keep it quiet and tell no one of this development because we wanted to be sure of getting the land. It was agreed between them that someone should buy it so we could have it. Thereafter Mr. Stevenson contacted an attorney who verified the ownership of the land by Wayne County as the result of a tax sale. On October 16 Mr. Stevenson made an offer to buy the land from the Wayne County Board of Supervisors for $50. His offer was accepted November 18, and the deed to him, dated December 1, was recorded in Wayne County Clerk’s office on December 15, 1964.
At the next meeting of the Fairport Yacht Club on December 17, 1964, the proposed certificate of incorporation was read, and authorization was given to pay the filing fee, after court approval of the certificate.
At this meeting Mr. Stevenson told the members he had purchased the half acre of land from Wayne County because the club was not incorporated, and an unincorporated association *404 was not capable of holding title to real property (see Schein v. Erasmus Realty Co., 194 App. Div, 38).
This position receives support by a fair preponderance of the evidence from witnesses who, in substance, testified that Mr. Stevenson in December stated to the meeting attended by more than 30 members that he would convey the land to the club after it was incorporated.
The minutes of the meeting also support this position and show: “ After a friendly discussion on which should come first: the docks or the clubhouse, a motion was made and seconded that the Club dig a channel and build docks and postphone [sic] the construction of a clubhouse until such time as the land can be purchased by the Club. The motion was carried in a secret ballot with 26 ‘ I’s ’ and 8 ‘.Noes (Italics supplied.)
On January 21, 1965, after the club had been incorporated, Mr. Stevenson refused to convey the property and imposed additional conditions on the transfer, requiring that a clubhouse be built and the annual dues raised to $50. Norman Mayer testified it was at this meeting, attended by 22 members, that Mr. Stevenson said he would release the land as soon as the dues were raised. Mayer then told Stevenson, after some discussion, “ We’re going to have to dance to your music or you’ll take your toys and go home ’ ’. Mayer offered to give Mr. Stevenson a check for his expenses in procuring the land and requested him to convey the land to the club. Mr. Stevenson refused to sell. Mr. Herron also made an offer to buy the land for the club, as did Mr. Otis Dodd, who offered to meet Mr. Stevenson at the bank and pay cash the next day. Mr. Stevenson refused all offers.
This, in effect, is conceded by Mr. Stevenson. He testified that he offered to give the land to Fairport Yacht Club if it would build. He says he offered the lot, a heating boiler, an oil tank and a fireplace.
The foregoing proof relating to the meeting of January 21, 1965 is uncontradicted and undisputed.
At the next meeting, on February 18,1965, Mr. Stevenson was not present, and the minutes show 16 of the 20 members present agreed to annual dues of $50, provided that Mr. Stevenson donate the land he owned to the club, and a clubhouse be built in the near future.
Thus an impasse was reached, and at the March, 1965 meeting a motion to build a clubhouse was lost by one vote, and thereafter Messrs. Stevenson, Ornt, Bernard and others resigned as members of the club and from' the Board of Directors of the corporation.
*405 Mr. Bernard testified that about eight of the former Fairport Yacht Club members, including himself and Mr. Stevenson, stayed after the meeting and formed a new club, the Wayneport Yacht Club, which was subsequently incorporated on May 17, 1965.
On September 3, 1965, Mr. Stevenson conveyed the land in question to Wayneport Yacht Club, Inc., and the deed was recorded that same day in Wayne County Clerk’s office.
Of interest, but of no special significance in this action, it appears that Wayneport Yacht Club then leased from the State of New York a portion of the land adjoining the leased lands of Fairport Yacht Club, Inc., at the eastern end of Fairport’s premises.
The one-half acre parcel of land in question is bounded on the east by the north-south highway which leads over the Wayne-port Bridge, and the leased lands of Wayneport Yacht Club, Inc., to the west of the parcel lie between the leased lands of Fairport Yacht Club and said parcel in question.
The proof shows that Wayneport Yacht Club, Inc., has materially improved its leased lands; however, the right to use these lands is not in dispute here, nor do the plaintiffs seek to obtain any benefit from the work done by Wayneport Yacht Club, Inc., on its leased adjacent land. It also appears that Fairport Yacht Club, Inc., has a right-of-way or easement across the lands of Wayneport Yacht Club, Inc., and another, so as to have access to its land, which is west of the leased land of Wayneport Yacht Club, Inc.
Defendant Earl Stevenson, a member of the land and building committee of the unincorporated Fairport Yacht Club and its successor Fairport Yacht Club, Inc., was also on its Board of Directors until his resignation in March of 1965. As such, Mr. Stevenson had a definite confidential relationship with and duty to the members of the Fairport Yacht Club and its corporate successor in acting for them to seek out a site for their activities. It matters not whether the committee was to lease or purchase land along the canal. It was incidental that Messrs. Ornt and Stevenson learned of the one-half acre of land adjoining the proposed State land to be leased and determined, as committee members, to keep it quiet in order to facilitate the purchase of the half acre parcel for the club’s protection. The proof shows that the other members of the committee, although numerous special meetings were held, did not know of the parcel of land until Mr. Stevenson had made arrangements to buy it himself, as agent for the club, or so it would appear from several witnesses. At any rate, the additional conditions *406 imposed by Mr. Stevenson gave rise to dissension within the organization culminating in the formation of the Wayneport Yacht Club, Inc., and the subsequent transfer of the property in question to it by the defendant Stevenson.
It is evident from the reported cases relating to constructive trusts imposed by the court that such an equitable device is available as a remedy for a myriad of situations. As Mr. Justice Cardozo wrote in Beatty v. Guggenheim Exploration Co. (225 N. Y. 380, 386): “A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee ”.
A situation somewhat similar to this case arose in Stephens v. Evans (190 Misc. 922), wherein a presumed committee member of a church group purchased property in her own name when the expressed intention of the church was to own the property as a meeting place, and Clara Stephens, as a church member, knew this.
Here the defendant Stevenson argues that he was only instructed to lease; that no one else would buy the land; that he wanted to insure a clubhouse be built; and in effect, that he held the legal title to the land as the means whereby he could insist on his terms. In short, he took advantage of a situation, which he claims was on his own and not as a representative of the Fail-port Yacht Club.
In Stephens v. Evans (supra, pp. 924-925), the court, with language particularly appropriate to this case, said: “At the most, it is said, she took advantage of a situation. This is a mere play on words and cannot be accorded the serious consideration which its proponents perhaps felt should be granted the argument. The ‘ situation ’ would not have been created if it were not for the membership of the plaintiff in the congregation and her resultant information regarding the proposed transaction. Plaintiff’s relationship with the church of which she was a member was such that she should be considered, if not a positive fiduciary, in at least an implied confidential relationship. Her undisputed and admitted behavior is that unconscionable conduct which requires the court of equity to force upon her conscience the constructive trust.”
Corpus Juris Secundum (vol. 89, Trusts, § 139) states in part:
“ The feature which distinguishes constructive trusts from express trusts and resulting trusts is that the former do not arise by virtue of agreement or intention, either actual or implied, but by operation of law, or, more accurately, by con *407 struction of the court, and that result is reached in such instances regardless of, and ordinarily contrary to, any intention to create a trust. Such trusts are entirely in invitum, and are forced on the conscience of the trustee in favor of the person defrauded, for the purpose of working out right and justice and preventing fraud, or, as frequently stated, for the purpose of preventing unjust enrichment” (italics supplied), and such a rule should definitely be applied here.
The defendant Wayneport Yacht Club, Inc., is not a bona fide purchaser for value. At the time of the transfer by Mr. Stevenson to it in September of 1965, the action against Mr. Stevenson had been commenced and pending for several months. Although plaintiffs never filed a Us pendens against the property, it is apparent that the members of the Wayneport Yacht Club, Inc., were all aware of the controversy existing between Fairport Yacht Club, Inc., and Earl Stevenson, one of the founders of the Wayneport Yacht Club, Inc. (see Bonham v. Coe, 249 App. Div. 428; see, also, 90 C. J. S., Trusts, §§ 435, 441, and New York cases cited therein).
The court finds that Wayneport Yacht Club, Inc., obligated itself to pay Earl Stevenson $200 for the cost of his expenses on obtaining the land in question.
Plaintiffs may have judgment, with costs and disbursements of these actions, against the defendant Earl Stevenson, that the conveyance of the one-half acre of land to the defendant Wayne-port Yacht Club, Inc., was in violation of his trust, duty and obligation as a member of the land and building committee of the Fairport Yacht Club and Fairport Yacht Club, Inc., of which he was a director.
Plaintiffs may also have judgment, with costs and disbursements, against the defendant Wayneport Yacht Club, Inc., that it be ordered and directed to convey the subject property (Liber 558 of Deeds, at p. 628, Wayne County Clerk’s office) to plaintiff Fairport Yacht Club, Inc., or its assignee, with suitable covenants against grantor, upon tender of the sum of $200, within 30 days from the date of service of a copy of the judgment herein upon defendants’ attorney, together with the amount of any taxes or assessments heretofore paid by said defendant.
In the event of any dispute between the parties as to the amounts to be paid in addition to the $200, any party may apply to the Special Term of the Supreme Court at the foot of the judgment herein for further directions. The parties may also make like applications for further directions regarding the enforcement of the judgment, if such instructions be necessary.